JAMES JANSSEN, Plaintiff-Appellant, *v.* AMERICAN HAWAII CRUISES, INC., Defendant-Appellant, and SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC GULF, LAKES AND INLAND WATERS DISTRICT, AFL-CIO, an unincorporated association, Defendant-Appellee.

NOS. 11071 & 11105

(CIVIL NO. 78257)

JANUARY 20, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

This is an appeal from a summary judgment in favor of Defendant Seafarers International Union of North America (Seafarers) in a negligence action. Plaintiff James Janssen and Defendant American Hawaii Cruises (AHC) seek reversal of the judgment. We affirm.

I.

Since 1980, AHC operated the S.S. Oceanic Independence, a cruise ship. AHC had a contract with Seafarers to have the union provide the ship with "capable, competent and physically fit persons when and where they are required."

In 1978, Walter Bachmeier, a civilian cook employed at San Quentin prison, met Steven Burkhart, an inmate employed in the prison's kitchen. Knowing that Burkhart was an accomplished chef and that he was to be paroled in early 1981, Bachmeier suggested that Burkhart seek employment at sea as a chef. To that end, Bachmeier obtained an employment application for Burkhart and wrote a letter of recommendation for him.

After Burkhart's release, Bachmeier accompanied him to the Seafarers Union Hall and introduced him to various union officials. Bachmeier told at least one union official that Burkhart was recently paroled from San Quentin, where he had been serving a term for a kidnap-related charge. Unknown to Bachmeier, Burkhart had been convicted on charges involving a homosexual attack.

After interviewing an applicant, AHC customarily submitted a letter of intent to the Coast Guard to initiate the process of securing merchant mariner's documentation. The applicant would then register with the union and join the ship's crew. A somewhat different course was taken in the present case. To expedite Burkhart's hiring, a Seafarers official induced an officer of an affiliated union to

write the letter of intent. When Burkhart obtained his merchant mariner's documents, Seafarers recommended him to AHC as a qualified applicant for employment as a chef. Seafarers did not inform AHC of Burkhart's recent incarceration.

AHC in April 1981 hired Burkhart as a sous chef on board the Independence. Neither Seafarers nor AHC investigated Burkhart's criminal record. Burkhart did not mention it during his interview with AHC.

During his ship-board employment, Burkhart became acquainted with the Plaintiff, James Janssen, who was employed as a ship's waiter. Janssen and Burkhart spent time together at work and during their off-duty hours.

In September 1981, the ship was damaged in an accident off the island of Kauai. Since it required extensive repairs, the ship was dry-docked on its return to Honolulu. Janssen and Burkhart were discharged.

Several days later, Janssen asked Burkhart to share a hotel room with him to minimize expenses. Burkhart agreed to room with Janssen for a month. A few days after taking the room together, Burkhart sexually attacked Janssen. Burkhart was subsequently convicted of first degree sodomy, kidnapping and first degree sexual abuse.

On June 27, 1983, Janssen brought this action against his former employer, AHC, and his former union, Seafarers. The complaint alleged that AHC and Seafarers were negligent in screening Burkhart prior to his employment, and in hiring, supervising and retaining him as an employee.[1] Janssen claimed AHC and Seafarers caused the assault by hiring Burkhart and placing him aboard the ship where the two became acquainted. AHC and Seafarers answered the complaint and cross-claimed against each other.

The court below denied AHC's motion to dismiss or for summary judgment, but granted Seafarers' summary judgment motion. The court subsequently certified as final, pursuant to Hawaii Rules of Civil Procedure, Rule 54(b), its orders granting Seafarers' motion for summary judgment and denying Janssen's and AHC's motions for reconsideration. This appeal followed.

---

[1] The complaint originally included certain maritime claims which the lower court dismissed prior to this appeal.

Asserting that Seafarers owed him a duty of care, Janssen contends the court erred in granting summary judgment in favor of Seafarers. AHC concedes that Seafarers owed no duty to Janssen, but challenges the grant of summary judgment based on its cross-claim for contribution and indemnification against Seafarers.

## II.

Fundamental to a negligence action is the existence of a duty owed by the defendant to the plaintiff. *Bidar v. AMFAC, Inc.,* 66 Haw. 547, 551, 669 P.2d 154, 158 (1983). The existence of a duty is a question of law. *Id.* 66 Haw. at 552, 669 P.2d at 158. We have said that a defendant owes a duty of care "only to those 'who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.' " *Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 68, 647 P.2d 713, 720 (1982) (quoting *Rodrigues v. State,* 52 Haw. 156, 174, 472 P.2d 509, 521 (1970)).

The *Restatement (Second) of Agency* § 213 (1958) reads in part: "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . (b) in the employment of improper person or instrumentalities in work involving risk of harm to others[.]' " Most jurisdictions recognize a duty on the part of the employer to exercise reasonable care in hiring individuals who, because of the nature of their employment, may pose a threat of injury to members of the public.[2] *See, e.g., Ponticas v. K.M.S. Investments,* 331 N.W.2d 907 (Minn. 1983); *Di Cosala v. Kay,* 91 N.J. 159, 450 A.2d 508 (1982). The existence of a duty under a negligent hiring theory depends upon foreseeability, that is, "whether the risk of harm from the dangerous employee to a person such as the plaintiff was reasonably foreseeable as a result of the employment." *Di Cosala,* 91 N.J. at ___, 450 A.2d at 516.

Under the facts of this case, we hold that Seafarers did not owe a duty of care to Janssen. We further conclude that no duty existed

---

[2] Liability for negligent hiring must be distinguished from liability imputed to the employer for an employee's wrongful acts under the doctrine of *respondeat superior. Ponticas v. K.M.S. Investments,* 331 N.W.2d 907, 911 n.5 (Minn. 1983).

between AHC and Janssen and that the complaint fails to state a claim upon which relief can be granted.[3] Hence, AHC in its cross-claim is not entitled to contribution and indemnification against Seafarers.

Janssen initially claims that Seafarers negligently screened applicants for employment on the Independence in referring Burkhart, whom Janssen claims was unfit. However, the duty to refer prospective employees arose out of the shipping agreement between Seafarers and AHC. This contractual duty ran only to AHC. Contrary to Janssen's allegation, nothing in the agreement obligated Seafarers to "screen" or otherwise investigate applicants. Since Seafarers owed no duty to AHC to screen applicants, it owed no such duty to the Plaintiff.

Janssen next argues that the union voluntarily assumed a duty of care by its active participation in the hiring of Burkhart. We understand this to be a claim that, under the particular circumstances of this case, Seafarers assumed the role of Burkhart's employer.

Assuming without deciding that Seafarers participated in Burkhart's hiring, Seafarers did not owe Janssen a duty of care. The sexual attack was not a reasonably foreseeable consequence of Seafarers' recommending Burkhart for employment as a chef. This is not a case where an employer knew its employees would have access to homes, or where the employees roomed together as a condition of employment. While Burkhart and Janssen may have met at work, they were not required to share living accommodations or to associate with one another on shore.

We have recognized that duty is "only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Waugh v. University of Hawaii*, 63 Haw. 117, 135, 621 P.2d 957, 970 (1980) (quoting W. Prosser, *The Law of Torts* § 53, at 325-26 (4th ed. 1971)). Without a reasonable and proper limitation of the scope of duty of care, Seafarers would be confronted with an unmanageable, unbearable and

---

[3] Janssen and Burkhart had been discharged and were living together on shore at the time of the attack. Consequently, Janssen's negligent supervision and retention claims are without merit.

totally unpredictable liability. *Kelley v. Kokua Sales and Supply, Ltd.,* 56 Haw. 204, 209, 532 P.2d 673, 676 (1975).

In hindsight, Burkhart may have posed a threat of harm to anyone with whom he came into contact. However, that potential risk of harm was in no way magnified by the fact of his employment on the ship. Thus, it cannot be said that Burkhart, because of the nature of his employment, posed a threat of injury to the public. To hold Seafarers liable under these facts would make it an insurer of the safety of anyone who may have become acquainted with Burkhart while he worked on the ship.

The judgment is affirmed and the case is remanded for further proceedings not inconsistent with this opinion.

*Alan Van Etten (John S. Edmunds, Ronald J. Verga* and *Ronald F. Movrich* with him on the opening brief and *John S. Edmunds, Ronald J. Verga* and *Jonathan J. Ezer* with him on the reply brief) for Plaintiff-Appellant *James Janssen.*

*Stephen D. Whittaker (David W. Proudfoot* and *J. Gregory Turnbull* with him on the briefs) for Defendant-Appellant American Hawaii Cruises, Inc.

*John H. Price (Richard K. Griffith* on the brief) for Defendant-Appellee Seafarers International Union of North America.