284 P.3d 918

**Jeffrey Scott MURPHY, Plaintiff–Appellant,**

v.

**Robert E. LOVIN, dba Lovin Construction, Defendant– Appellee**

and

**Proservice Hawaii Business Development Corporation, Mike Juarez, Defendants.**

**No. 29452.**

Intermediate Court of Appeals of Hawai'i.

Oct. 28, 2011.

As Corrected Jan. 10, 2012.

Opinion of the Court by GINOZA, J.

Plaintiff–Appellant Jeffrey Scott Murphy (Murphy) appeals from the Amended Final Judgment filed on October 21, 2008 in the Circuit Court of the Third Circuit (circuit court).[1] In this tort action, Plaintiff Murphy brought claims against Defendant Mike Juarez (Juarez) and Defendant–Appellee Robert E. Lovin, dba Lovin Construction (Lovin). On Plaintiff Murphy's claims against Juarez, judgment was entered in favor of Murphy and against Juarez in the total amount of $74,000. However, as to Plaintiff Murphy's claims against Lovin, judgment was entered against Murphy and in favor of Defendant Lovin. Pursuant to Rules 25 and 26 of the Hawai'i Arbitration Rules (HAR), the circuit court awarded Defendant Lovin attorneys' fees in the amount of $15,000 and costs in the amount of $4,100.75, for a total of $19,100.75, against Plaintiff Murphy.

On appeal, Murphy challenges the circuit court's award of attorneys' fees and costs to Lovin. Murphy also contends that the circuit court erred in giving two jury instructions at trial.

We conclude that in multi-party lawsuits, under HAR Rules 25 and 26 governing the Court Annexed Arbitration Program (CAAP), a party whose appeal from an arbitration award results in a trial de novo can be a "prevailing party" with regard to one party while being a "non-prevailing party" as to another party for purposes of awarding attorneys' fees and costs. The circuit court was therefore authorized to award attorneys' fees and costs to Lovin and against Murphy even though Murphy was a prevailing party as to Juarez.

We also conclude that the circuit court did not err in its instructions to the jury.

The Amended Judgment entered by the circuit court is therefore affirmed.

Lawrence W. Cohn, Kailua–Kona, Robert D.S. Kim, Kealakekua, on the opening brief, for Plaintiff–Appellant.

FOLEY, Presiding Judge, FUJISE, and GINOZA, JJ.

## I. CASE BACKGROUND

### A. Proceedings in the Circuit Court

Plaintiff Murphy claims in this case that, on or about August 5, 2005, while he was

---

1. The Honorable Ronald Ibarra presided.

working for Lovin at a construction site, he was assaulted and battered by Juarez without provocation or warning, and that Juarez was also employed by Lovin at that time. On October 19, 2006, Murphy filed this tort action against, *inter alia*,[2] Juarez and Lovin, claiming that Juarez acted wantonly or oppressively in assaulting him and that Lovin was negligent and/or reckless in hiring, training, and supervising Juarez.

On December 11, 2007, after publication of summons against Juarez, the circuit court entered an order granting entry of default against Juarez.

The case was assigned to the CAAP and Murphy's claims were submitted to arbitration. On May 7, 2008, the arbitrator entered an award finding "defendant is not liable" and awarding damages against "defendant."[3] On May 27, 2008, Murphy filed a "Notice of Appeal and Request for Trial De Novo" pursuant to HAR Rule 22.

On July 22, 2008, a jury trial commenced in the circuit court on the issues of whether Lovin was negligent; if Lovin was negligent, the percentage of responsibility between Juarez and Lovin; and damages. The record reflects that both Murphy and Lovin submitted proposed jury instructions. Murphy contends on appeal that he objected to Lovin's proposed Special Jury Instruction No. 1 (which became Final Jury Instruction 24) and to Lovin's Proposed Jury Instruction No. 6.5 (which became Final Jury Instruction 26), but there is nothing in the record on appeal documenting Murphy's objections.[4]

The jury returned a special verdict on July 31, 2008 finding that Lovin was not negligent. The jury also determined damages, finding that Murphy had sustained $34,000 in special damages and $20,000 in general damages, and awarding $20,000 in punitive damages against Juarez.

On August 28, 2008, Lovin filed a motion requesting an award of attorneys' fees and costs under HAR Rules 25 and 26. The circuit court granted Lovin's motion and issued an order on October 21, 2008, awarding attorneys' fees in the amount of $15,000 and costs in the amount of $4,100.75, for a total of $19,100.75 against Murphy.

The Amended Final Judgment was entered on October 21, 2008, which: awarded $74,000 in favor of Murphy and against Juarez; entered judgment against Murphy and in favor of Lovin; and awarded attorneys' fees and costs in the total amount of $19,100.75 for Lovin against Murphy.

## B. *Points on Appeal*

Murphy raises three points of error in this appeal. First, Murphy contends that the circuit court erred in granting Lovin's motion for attorneys' fees and costs against Murphy under HAR Rules 25 and 26. Murphy asserts that the circuit court did not have authority to assess attorneys' fees and costs against him under HAR Rules 25 and 26 because he improved upon the arbitration award by thirty percent or more vis-a-vis Juarez and he was therefore the "prevailing party" under the rules. Murphy also con-

**2.** Another defendant, ProService Hawaii Business Development Corporation, was dismissed by stipulation from the case.

**3.** Where both Juarez and Lovin were defendants in the case, it is unclear why the arbitration award refers only to "defendant." Nonetheless, there is nothing in the record to suggest that Murphy or any other party sought to have the arbitrator correct the award, *see* HAR Rule 20(b), and the effect of the arbitration award was that zero damages were awarded to plaintiff Murphy. Murphy thus appealed and a trial *de novo* was held with regard to both defendants. As to Juarez, the jury only addressed the question of damages, apparently because default had been entered against him.

**4.** In his opening brief, Murphy asserts that he objected to the challenged jury instructions, but

"due to an error in ordering the transcript, the transcript was not transcribed or prepared." Murphy's failure to provide this court with the trial transcript documenting his objections to the instructions he now challenges on appeal is a violation of Rule 28(b)(4) of the Hawai'i Rules of Appellate Procedure (HRAP). HRAP Rule 28(b)(4)(B) states that when a point of error "involves a jury instruction, a quotation of the instruction, given, refused, or modified, *together with the objection urged at the trial*" should be provided by the appellant. (Emphasis added). HRAP Rule 28(b)(4) further provides that "[p]oints not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented."

tends it was inequitable for the circuit court to award such fees and costs.

Second, Murphy contends that the circuit court committed plain error by giving Final Jury Instruction 24, regarding Murphy's claim of negligent hiring, because it was an erroneous statement of the law in Hawai'i.

Third, and similarly, Murphy contends that the circuit court committed plain error by giving Final Jury Instruction 26, also regarding Murphy's claim of negligent hiring, because it was an erroneous statement of the law in Hawai'i.

## II. STANDARDS OF REVIEW

### A. Award of Fees and Costs Under HAR Rules 25 and 26

■■■ The circuit court's authority to award Lovin costs and attorneys' fees under HAR Rules 25 and 26 is a question of law which we review *de novo*. As stated by the Hawai'i Supreme Court:

[A] determination of who is the prevailing party involves interpretation of the HAR . . . which are rules promulgated by the court. When interpreting rules promulgated by the court, principles of statutory construction apply. Interpretation of a statute is a question of law which we review *de novo*. Consequently, we interpret the HAR . . . *de novo*.

*Molinar v. Schweizer*, 95 Hawai'i 331, 334–35, 22 P.3d 978, 981–82 (2001) (citations and internal quotation marks omitted). *See also Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 510, 880 P.2d 169, 185 (1994) ("circuit court's interpretation of HAR 26 constituted a conclusion of law" which should be reviewed under the "right/wrong standard."); *Kealoha v. County of Hawai'i*, 74 Haw. 308, 324, 844 P.2d 670, 678 (1993).

■■■ We review the question of whether an award of costs and attorneys' fees under HAR Rules 25 and 26 was "inequitable" under an abuse of discretion standard. *See Richardson*, 76 Hawai'i at 511, 880 P.2d at 186. An abuse of discretion occurs if the trial court has "clearly exceeded the bounds

of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

### B. Jury Instructions and Plain Error Review

■■■ In reviewing a trial court's issuance or refusal of a jury instruction, we review "whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *Nelson v. Univ. of Hawai'i*, 97 Hawai'i 376, 386, 38 P.3d 95, 105 (2001) (internal quotation marks and citations omitted); *see also Moyle v. Y & Y Hyup Shin, Corp.*, 118 Hawai'i 385, 391, 191 P.3d 1062, 1068 (2008).

■■■ For plain error review, if it is determined that a jury instruction is erroneous, the criteria for recognizing plain error is summarized as follows:

In civil cases, the plain error rule is only invoked when "justice so requires." We have taken three factors into account in deciding whether our discretionary power to notice plain error ought to be exercised in civil cases: (1) whether consideration of the issue not raised at trial requires additional facts; (2) whether its resolution will affect the integrity of the trial court's findings of fact; and (3) whether the issue is of great public import.

*Montalvo v. Lapez*, 77 Hawai'i 282, 290, 884 P.2d 345, 353 (1994) (quoting *State v. Fox*, 70 Haw. 46, 56 n. 2, 760 P.2d 670, 676 n. 2 (1988)).

## III. DISCUSSION

### A. Attorneys' Fees and Costs Under HAR Rules 25 and 26

#### 1. Circuit court's authority to award fees and costs

The CAAP is a "mandatory, non-binding arbitration program . . . for certain civil cases in the State of Hawai'i." HAR Rule 1.[5]

---

5. The matters subject to CAAP arbitration are set forth in HAR Rule 6, and generally include "tort cases having a probable jury award value, not reduced by the issue of liability and not in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs[.]" Fur-

As set forth in HAR Rule 2(A), "[t]he purpose of the Program is to provide a simplified procedure for obtaining a prompt and equitable resolution of certain civil matters[.]"

Within twenty days after a CAAP arbitration award is served, any party may file a notice of appeal and request a trial *de novo* of the action. HAR Rule 22(A). After the trial *de novo*, HAR Rule 25 defines who is the "prevailing party" and sets forth provisions as to payment of certain costs. HAR Rule 26, in turn, sets forth the requirements for when sanctions, including attorneys' fees, may be assessed "against the non-prevailing party whose appeal resulted in the trial de novo."

HAR Rule 25 provides:

### RULE 25. THE PREVAILING PARTY IN THE TRIAL DE NOVO; COSTS

(A) The "Prevailing Party" in a trial de novo is the party who (1) appealed and improved upon the arbitration award by 30% or more, or (2) did not appeal and the appealing party failed to improve upon the arbitration award by 30% or more. For the purpose of this rule, "improve" or "improved" means to increase the award for a plaintiff or to decrease the award for the defendant.

(B) The "Prevailing Party" under these rules, as defined above, is deemed the prevailing party under any statute or rule of court. As such, the prevailing party is entitled to costs of trial and all other remedies as provided by law, unless the Court otherwise directs.

HAR Rule 26 provides:

### RULE 26. SANCTIONS FOR FAILING TO PREVAIL IN THE TRIAL DE NOVO

(A) After the verdict is received and filed, or the court's decision rendered in a trial de novo, the trial court may, in its discretion, impose sanctions, as set forth below, against the non-prevailing party whose appeal resulted in the trial de novo.

ther, "[a]ny other civil case, regardless of the monetary value or the amount in controversy, may be submitted to the Program upon the

(B) The sanctions available to the court are as follows:

(1) Reasonable costs and fees (other than attorneys' fees) actually incurred by the party but not otherwise taxable under the law, including, but not limited to, expert witness fees, travel costs, and deposition costs;

(2) Costs of jurors;

(3) Attorneys' fees not to exceed $15,000;

(C) Sanctions imposed against a plaintiff will be deducted from any judgment rendered at trial. If the plaintiff does not receive a judgment in his or her favor or the judgment is insufficient to pay the sanctions, the plaintiff will pay the amount of the deficiency. Sanctions imposed against a defendant will be added to any judgment rendered at trial.

(D) In determining sanctions, if any, the Court shall consider all the facts and circumstances of the case and the intent and purpose of the Program in the State of Hawai'i.

HAR Rules 25 and 26 "establish the possible consequences to which each party may be subject for failing to prevail" following a trial *de novo*. *Molinar*, 95 Hawai'i at 338, 22 P.3d at 985. Under HAR Rule 25, certain costs may be taxed against either the party who appealed from the arbitration award *or* the non-appealing party, depending on who is the "prevailing party" as defined in that rule. HAR Rule 25. However, under HAR Rule 26, sanctions such as attorneys' fees can only be imposed against a party whose appeal resulted in the trial *de novo* and who is the non-prevailing party. HAR Rule 26. In other words, "an appealing party who fails to prevail is subject to potentially greater 'penalties' than a non-appealing party who fails to prevail" because in addition to possibly being ordered to pay the other parties' costs pursuant to HAR Rule 25, such an appealing party may also be ordered to pay sanctions such as attorneys' fees and additional types of costs. *Molinar*, 95 Hawai'i at 338–39, 22 P.3d at 985; *see* HAR Rules 25 and 26.

agreement of all parties and the approval of the Arbitration Judge."

In the arbitration in this case, Murphy was not awarded damages from either Juarez or Lovin. However, following Murphy's appeal of the arbitration award and the subsequent trial *de novo,* the jury awarded Murphy damages in the amount of $74,000 and judgment was entered in this amount against Juarez. The same jury also determined that Lovin was not negligent, and therefore judgment was entered in favor of Lovin.

Under these circumstances, the circuit court awarded attorneys' fees and costs to Lovin and against Murphy pursuant to HAR Rules 25 and 26. Murphy challenges the circuit court's authority to award fees and costs, contending that after he appealed from the CAAP arbitration award, he improved upon the arbitration award against Juarez by thirty percent or more and should therefore be considered the "prevailing party" for purposes of HAR Rules 25 and 26, even though he did not improve upon the arbitration award with regard to Lovin. The language of the rules does not expressly address this point.

Murphy's appeal thus raises the question of whether, in a multi-party lawsuit, a party who appeals from a CAAP arbitration award for a trial *de novo* can be a prevailing party as to one party and a non-prevailing party as to a different party. We answer in the affirmative.

The purpose and policy goals embodied in the CAAP support such a conclusion. The CAAP was established in 1986 pursuant to Hawaii Revised Statutes (HRS) § 601–20 (1993 Repl.), which states in part:

[§ 601–20] **Court annexed arbitration program.** (a) There is established within the judiciary a court annexed arbitration program which shall be a mandatory and nonbinding arbitration program *to provide for a procedure to obtain prompt and equitable resolution of certain civil actions in tort through arbitration.* The supreme court shall adopt rules for the implementation and administration of the program[.]

HRS § 601–20(a) (emphasis added). As noted by the Hawai'i Supreme Court:

the legislature statutorily codified the CAAP as a means to reduce the delay and costs involved in protracted litigation by "provid[ing] for a procedure to obtain prompt and equitable resolution of certain civil actions in tort through arbitration." HRS § 601–20(a) (Supp.1992); HAR 2(A); Spec. Comm. Rep. No. S5–86, in 1986 Senate Journal Special Session, at 29. At the same time, the supreme court was delegated the authority to adopt rules to implement the CAAP. HRS § 601–20(a).

*Richardson,* 76 Hawai'i at 510–11, 880 P.2d at 185–86. In particular, HAR Rule 26 encourages every party to undertake a reasonable and frank post-arbitration evaluation of the merits of their respective case. *See id.* at 511, 514, 880 P.2d at 186, 189. In *Richardson,* the Hawai'i Supreme Court explained:

Indisputably, baseless or frivolous appeals from an arbitration decision subvert the purposes of the CAAP because they prevent prompt and equitable resolutions of actions and, as such, must be discouraged. *The goals of the CAAP would be jeopardized without a mechanism to ensure meaningful participation in the program and to encourage participants to seriously evaluate the merits of their case following the arbitration before expending the additional time and expense of a trial de novo.* In other words, the vital objectives of the CAAP cannot be met if participants invariably treat arbitration as a routine or *pro forma* step along the path to trial *de novo* by rejecting reasonable arbitration decisions or reasonable post-arbitration settlement offers, even though the decision to appeal is not technically "frivolous."

*Id.* at 510–11, 880 P.2d at 185–86 (internal quotation marks, brackets and citation omitted) (emphasis added).

Murphy's argument, that the circuit court lacked authority to assess attorneys' fees and costs against him under HAR Rules 25 and 26 because he improved upon the arbitration award by thirty percent or more vis-a-vis Juarez, ignores the fact that he failed to improve upon the arbitration award by thirty percent as to Lovin. Following Murphy's logic, in a multi-party lawsuit, a party could pursue appeals through trial *de novo* with

impunity to sanctions and costs under HAR Rules 25 and 26 as long as this party improved on the arbitration award by thirty percent as to at least one other party. In this circumstance, an appealing party would have no incentive to candidly assess the merits of its case against each adverse party prior to seeking a trial *de novo* as to multiple parties. A non-appealing party in such circumstances, such as Lovin, would have no mechanism under the rules to seek recovery for costs and attorneys' fees incurred as a result of being hauled to defend itself through a trial *de novo*. When considered in light of the important interests the CAAP serves to "reduce delay and costs," the rationale argued by Murphy is clearly contrary to the purpose and intent of the CAAP. *See* Spec. Comm. Rep. No. S5–86, in 1986 Senate Journal Special Session, at 29.

Further, the Hawai'i Supreme Court has been reluctant to limit the applicability of HAR Rule 26 to narrowly defined circumstances beyond the language of the rule itself. In *Richardson,* the Hawai'i Supreme Court declined to limit sanctions under HAR Rule 26 to frivolous or bad faith appeals from arbitration awards and only to offset an affirmative recovery by the sanctioned party. *See* 76 Hawai'i at 509–12, 880 P.2d at 184–87. In that case, Renee Richardson and her husband, Thaddeus Richardson (the Richardsons), filed suit against the owner and operator of the Queen Kapiolani Hotel, Sport Shinko, alleging negligent maintenance of the hotel premises after Mrs. Richardson sustained injuries while at the hotel. *Id.* at 497–98, 880 P.2d at 172–73. The case proceeded under the CAAP, where Sport Shinko was found liable and the Richardsons were awarded a total of $60,441.80 in damages. *Id.* at 498, 880 P.2d at 173. Pursuant to HAR Rule 22, the Richardsons appealed the award for a trial *de novo*. *Id.* Prior to trial, the Richardsons did not accept Sport Shinko's offer to settle for $70,000 as to Mrs. Richardson and $5,000 as to Mr. Richardson. *Id.* A jury trial commenced and the jury found that Sport Shinko was not negligent.

*Id.* at 499, 880 P.2d at 174. Following entry of judgment in its favor, Sport Shinko brought a motion for sanctions pursuant to HAR Rule 26. *Id.* The circuit court granted the motion in the amount of $5,234.41. *Id.*

On appeal, the Richardsons argued, *inter alia,* that the circuit court erred in awarding sanctions to Sport Shinko. *Id.* at 497, 880 P.2d at 172. The Richardsons argued for a narrow construction of HAR Rule 26, asserting that sanctions under that rule may be imposed on a non-prevailing party *only* when the appeal of the arbitration award was frivolous or in bad faith. *Id.* The Richardsons also argued that the rule did not allow sanctions to be paid by a party out of pocket, but rather only to offset an affirmative recovery by a plaintiff being sanctioned. *Id.*

The Hawai'i Supreme Court disagreed. *Id.* at 509–12, 880 P.2d at 184–87. The court pointed out that the Richardsons' interpretation of HAR Rule 26 was not supported by the language of the rule and was inconsistent with the CAAP's overall purpose. *Id.* at 510–11, 880 P.2d at 185–86. Although the court acknowledged that a purpose of the rule is to discourage baseless appeals, the court held that "based on the plain language and purpose of HAR [Rule] 26, limiting the application of the rule to frivolous or baseless appeals from the arbitration award would be *unduly restrictive.*" *Id.* at 510, 880 P.2d at 185 (emphasis added). Further, the court pointed out that "the only explicit limit on the circuit court's discretion to impose HAR [Rule] 26 sanctions is that the party who has appealed the arbitration award must have failed to 'improve' upon the award by [the percentage required by the rule]." [6] *Id.* The court declined to adopt the Richardsons' narrow interpretation of HAR Rule 26 and held that "HAR 26 sanctions may be imposed to penalize a non-prevailing party whose decision to appeal the arbitration award and pursue a trial *de novo* was unreasonable under the circumstances of the particular case, albeit grounded to some degree in law or fact." *Id.* at 511, 880 P.2d at 186. By refus-

---

**6.** For the time period relevant in *Richardson,* HAR Rule 25 required an improvement of fifteen percent or more from the arbitration award to be a "prevailing party." Since then, HAR Rule 25 was amended and now requires an improvement of thirty percent or more on an arbitration award for a party to be considered the "prevailing party." *See* HAR Rule 25.

ing to limit the availability of sanctions only to cases involving frivolous appeals or to cases in which a plaintiff has an affirmative recovery, the court preserved the discretion of trial courts to order sanctions and effectuated the policy underlying these rules to "reduce the delay and costs involved in protracted litigation." *Id.* at 510, 880 P.2d at 185.

In other circumstances addressing awards of attorneys' fees and costs, this court has acknowledged that in multiple party cases, "a party may be a loser as to one party and a winner as to another." *Rosa v. Johnston,* 3 Haw.App. 420, 431, 651 P.2d 1228, 1236 (App. 1982); *see also Cuerva & Assocs. v. Wong,* 1 Haw.App. 194, 616 P.2d 1017 (1980).

In *Rosa,* Hiram and Myrna L. Rosa (the Rosas) brought suit against CWJ Corporation (CWJ) and CWJ's president, Charles W. Johnston (Johnston), alleging *inter alia* breach of contract and unfair and deceptive trade practices. 3 Haw.App. at 421, 651 P.2d at 1231. The circuit court dismissed the complaint as to Johnston, but denied Johnston's request for attorneys' fees and costs. *Id.* Johnston appealed and argued that the circuit court erred in denying his motion for attorneys' fees under HRS § 607–14 (1985 Repl.) and costs under Rule 54 of the Hawaiʻi Rules of Civil Procedure (HRCP) and HRS § 607–9 (1976 Repl.). *Id.* Johnston argued that he was entitled to attorneys' fees and costs because he prevailed over the Rosas. *Id.* at 430, 651 P.2d at 1236. The Rosas countered that they were not the "losing parties" because they prevailed over CWJ. *Id.* at 431, 651 P.2d at 1236. This court reversed the circuit court's order denying Johnston's request for attorneys' fees and costs. *Id.* at 431, 651 P.2d at 1237. In reaching this decision, the court recognized that HRS § 607–14 did not preclude the Rosas from being the prevailing parties with regard to CWJ and also the losers as to Johnston for purposes of taxation of attorneys' fees, and that Johnston was entitled to seek costs under HRCP Rule 54 and HRS § 607–9 "as a prevailing party vis-a-vis [the] Rosas." *Id.* at 431, 651 P.2d at 1236–37.

■ Application of the principles articulated in *Rosa* to HAR Rules 25 and 26 is consistent with the policy underlying the CAAP. Therefore, we hold that in multiparty lawsuits, under HAR Rules 25 and 26, a party whose appeal results in a trial *de novo* can be a "prevailing party" with regard to one party and can also be a "non-prevailing party" with regard to another party for purposes of awarding attorneys' fees and costs. To hold otherwise would fail to effectuate the policy aims of the CAAP to "reduce the delay and costs involved in protracted litigation" and a key purpose of HAR Rule 26 to encourage litigants to candidly assess the merits of their case against all parties in the suit prior to appealing for a trial *de novo. Richardson,* 76 Hawaiʻi at 510–11, 880 P.2d at 185–86; Spec. Comm. Rep. No. S5–86, in 1986 Senate Journal Special Session, at 29.

■ Here, Murphy is the prevailing party as to Juarez, but he is the non-prevailing party as to Lovin. The circuit court was therefore authorized to award attorneys' fees and costs against Murphy and to Lovin pursuant to HAR Rules 25 and 26.

### 2. *The circuit court's award of fees and costs was not inequitable*

Murphy contends that it was inequitable for the circuit court to award fees and costs to Lovin because the allowance of costs was not mandatory and the equities did not favor making such an award. We review this issue under an abuse of discretion standard. *Richardson,* 76 Hawaiʻi at 511, 880 P.2d at 186. An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc.,* 74 Haw. at 114, 839 P.2d at 26.

■ Under HAR Rule 25, the circuit court is not mandated to order payment of costs, but instead has discretion. The commentary to the rule states, in relevant part:

The July 1, 1999 amendment makes clear that the allowance of costs to the prevailing party is not mandatory. The amendment is intended to vest the trial court with discretion in awarding taxable costs to avoid inequitable results. In weighing the equities, the trial court may

consider factors such as the nature of the case, the conduct of the parties throughout the litigation, including arbitration proceedings, the amount and timing of settlement offers made by the parties, the amount of the judgment, and other relevant factors.

HAR Rule 25 Commentary.[7]

 Under HAR Rule 26, a circuit court's decision to award attorneys' fees or other sanctions is also discretionary. The rule states, in relevant part, "[a]fter the verdict is received and filed, or the court's decision rendered in a trial de novo, the trial court *may, in its discretion,* impose sanctions, as set forth below, against the non-prevailing party whose appeal resulted in the trial de novo." HAR Rule 26(A) (emphasis added).

 Murphy emphasizes the merits of his claims against Lovin and argues that his appeal of the arbitration award was not frivolous. However, in *Richardson,* the Hawai'i Supreme Court rejected this argument as "unduly restrictive." *See* 76 Hawai'i at 510, 880 P.2d at 185. Murphy also urges this court to reconsider the award of attorneys' fees and costs based on the nature of the case, the conduct of the parties during the litigation, the amount and timing of any settlement offers, the amount of the judgment, and other relevant factors.[8] In the circuit court, "the losing party . . . bears the burden of showing an award of costs would be 'inequitable under the circumstances.'" *Kikuchi*

*v. Brown,* 110 Hawai'i 204, 211, 130 P.3d 1069, 1076 (App.2006) (citation omitted). Murphy's arguments were carefully considered and weighed by the circuit court in deciding the motion.[9]

Murphy fails to point out specifically how the circuit court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice" to his substantial detriment. Murphy simply reiterates on appeal the arguments previously considered and duly rejected by the circuit court. We conclude that the circuit court did not abuse its discretion in its award of attorneys' fees and costs to Lovin.

### B. *Jury Instructions*

Murphy argues that the circuit court erred when it gave Final Jury Instructions 24 and 26 over Murphy's objection because the instructions were prejudicially insufficient and erroneous. As admitted by Murphy, the record on appeal does not contain his objections to these jury instructions. He therefore cannot demonstrate compliance with HRCP Rule 51(f), and his opening brief fails to comport with the requirements of HRAP Rule 28(b).

HRCP Rule 51(f) states:

No party may assign as error the giving or the refusal to give, or the modification of, an instruction, whether settled pursuant to subdivision (c) or subdivision (d), of this rule, unless the party objects thereto before the jury retires to consider its verdict,

---

7. The 1999 amendment to HAR Rule 25 made the following changes to section B of the rule (deleted material is bracketed and new material is underlined):

> (B) The "Prevailing Party" under these rules, as defined above, is deemed the prevailing party under any statute or rule of court[,]. [and as] As such, the prevailing party is entitled to costs of trial and all other remedies as provided by law[.], unless the Court otherwise directs.

Amended Order Amending Rule 25(B) of the Hawai'i Arbitration Rules, entered April 20, 1999.

8. Murphy essentially reiterates verbatim the arguments he raised in the circuit court in his memorandum in opposition to Lovin's motion for attorneys' fees and costs.

9. The circuit court's order read, in pertinent part:

> The Court, having considered the motion, the supporting memorandum, declaration and exhibits, the opposition to the motion, and the representations of counsel at the hearing, and considering the equities in this matter, being fully advised in the premises and finding good cause therefor,
> HEREBY ORDERS, ADJUDGES AND DECREES that Defendant Robert E. Lovin, dba Lovin Construction's Motion for an Award of Attorneys' Fees and Costs filed on August 28, 2008 is GRANTED and Defendant Robert E. Lovin, dba Lovin Construction is awarded attorneys' fees in the amount of $15,000.00 and costs in the amount of $4,100.75, for a total of $19,100.75 against Plaintiff Jeffrey Scott Murphy based upon Rules 25 and 26 of the Hawaii Arbitration Rules.

stating distinctly the matter to which the party objects and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.[10]

Further, HRAP Rule 28(b)(4)(B) states that when a point of error involves a jury instruction, an appellant must provide "a quotation of the instruction, given, refused, or modified, *together with the objection urged at the trial.*" (Emphasis added). In turn, HRAP Rule 28(b)(4) states that "[p]oints not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented." Recognizing the problem raised by his failure to provide the transcripts, Murphy urges that we review Final Jury Instructions 24 and 26 for plain error.

For plain error review, we first consider whether the jury instructions were erroneous. In this regard, we consider if, "when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *Nelson,* 97 Hawai'i at 386, 38 P.3d at 105 (internal quotation marks and citations omitted); *see also Moyle,* 118 Hawai'i at 391, 191 P.3d at 1068.

The circuit court's instructions to the jury, in pertinent part, stated:

[Final Jury Instruction 24:] To prove negligent hiring, Plaintiff must prove that at the time of hiring the circumstances gave the employer reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his employment responsibilities and that the employer acted unreasonably in hiring the person.

In determining whether an employer acted unreasonably in hiring the person it must be established that the employee was in fact unfit, taking into consideration the nature of the employment and the risk posed by the employee to those who foreseeably would come into association with him in carrying out his duties on the job.[11]

[Final Jury Instruction 25:] In order to prevail on a claim for negligent hiring, Plaintiff must show: (1) Defendant owed a duty of care to the Plaintiff; (2) Defendant breached that duty by hiring or retaining an employee even though Defendant knew, or should have known, of the employee's dangerous propensities; (3) the Plaintiff suffered monetarily compensable physical or emotional injuries; and, (4) the breach of the duty was the proximate cause of Plaintiff's physical or emotional injuries.

[Final Jury Instruction 26:] The existence of a duty depends upon foreseeability, that is, whether the risk of harm from the employee to a person such as the plaintiff was reasonably foreseeable as a result of the employment. Liability under a negligent hiring theory may be found only where an employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons.[12]

[Final Jury Instruction 27:] Unless the employee's job duties include frequent contact with the public or the employer has a special relationship with the injured party, such as exists where the employee is required to enter the injured party's residence as part of his job duties, there is no duty on the part of the employer to make an independent investigation of the employee's background.

First, Murphy asserts that Final Jury Instruction 24 "was cobbled together by copying segments from three cases, only one of

---

10. Previously, similar language was contained in HRCP Rule 51(e). Notwithstanding the requirements under the rule, it has been recognized that "even the complete failure to object to a jury instruction does not prevent an appellate court from taking cognizance of the trial court's error if the error is plain and may result in a miscarriage of justice." *Montalvo,* 77 Hawai'i at 288, 884 P.2d at 351 (citation omitted).

11. This instruction is the subject of Murphy's second point on appeal.

12. This instruction is the subject of Murphy's third point on appeal.

which is a Hawaii case."[13] Second, Murphy argues that Final Jury Instruction 26 "does not follow Hawaii law and adds more hurdles for the jury to jump over" in order to find Lovin liable. Because jury instructions are considered collectively when reviewed for error and both instructions at issue concern foreseeability in the context of a negligent hiring claim, they will be considered together.

Murphy takes issue with Lovin's reliance on two cases from outside jurisdictions to craft the jury instructions adopted by the circuit court, claiming these cases are inconsistent with Hawai'i law under *Janssen v. Am. Haw. Cruises, Inc.*, 69 Haw. 31, 731 P.2d 163 (1987). We do not agree.

In *Janssen*, the Hawai'i Supreme Court held that the Seafarers International Union of North America (Seafarers) owed no duty of care to an employee on a cruise ship (Janssen) who was sexually attacked by another ship employee (Burkhart) after the two agreed to share a hotel room following their discharge from employment.[14] *Id.* The court determined that, even if it assumed that Seafarers participated in the hiring of Burkhart, the "sexual attack was not a reasonably foreseeable consequence of Seafarers' recommending Burkhart for employment as a chef." *Id.* at 35, 731 P.2d at 166.

In reaching this conclusion, the Hawai'i Supreme Court relied on the Restatement (Second) of Agency § 213(b) and acknowledged that "[m]ost jurisdictions recognize a duty on the part of the employer to exercise reasonable care in hiring individuals who, because of the nature of their employment, may pose a threat of injury to members of the public." *Id.* at 34, 731 P.2d at 166. This Restatement section recognizes the tort of negligent hiring and states, in relevant part, that "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless ... (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others." Restatement (Second) of Agency § 213 (1958).[15]

The court in *Janssen* ruled that "[t]he existence of a duty under a negligent hiring theory depends upon foreseeability, that is, 'whether the risk of harm from the dangerous employee to a person such as the plaintiff

---

13. The three cases relied upon by Lovin to craft the jury instructions adopted by the circuit court and that are at issue on appeal are *Janssen v. Am. Haw. Cruises, Inc.*, 69 Haw. 31, 731 P.2d 163 (1987), *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316 (Colo.1992), and *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907 (Minn.1983).

14. In *Janssen*, plaintiff James Janssen sued his former union, Seafarers, and his former employer, American Hawaii Cruises (AHC), which operated the ship. Neither Seafarers nor AHC investigated Steven Burkhart's criminal record prior to Burkhart's hiring by AHC. *Janssen*, 69 Haw. at 33, 731 P.2d at 165. Although one official at Seafarers was told that Burkhart had been recently paroled from San Quentin prison, Seafarers did not inform AHC of Burkhart's recent incarceration. *Id.* Janssen, the victim of the attack, filed suit against AHC and Seafarers, alleging that both entities were "negligent in screening Burkhart prior to his employment, and in hiring, supervising[,] and retaining him as an employee." *Id.* at 31, 731 P.2d at 163. Janssen further claimed that both entities caused the assault by hiring Burkhart and placing him aboard the ship, where the two became acquainted. *Id.* The trial court granted Seafarers's motion for summary judgment, which Janssen challenged on appeal. *Id.* at 34, 731 P.2d at 165.

15. A more recent counterpart to Restatement (Second) of Agency § 213 is set forth in Restatement (Third) of Agency § 7.05 (2006), which provides, in relevant part:

(1) A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent.

Similar to Restatement (Second) of Agency § 213, a fundamental basis for liability under Restatement (Third) of Agency § 7.05 is a foreseeable risk of harm.

d. *Foreseeable risk and reasonable precaution.* Conduct that results in harm to a third person is not negligent or reckless unless there is a foreseeable likelihood that harm will result from the conduct. A determination that a person acted negligently also requires consideration of the foreseeable severity of harm to a third person ... When a principal conducts an activity through another person, the nature of the task to be performed and the conduct required for performance are relevant to whether the principal acted negligently, either in selecting the actor or in instructing, supervising, or otherwise controlling the actor.

Restatement (Third) of Agency § 7.05 cmt. d.

was reasonably foreseeable as a result of the employment.' " 69 Haw. at 34, 731 P.2d at 166 (citing *Di Cosala v. Kay*, 91 N.J. 159, 174, 450 A.2d 508, 516 (1982)). The court acknowledged that "[w]ithout a reasonable and proper limitation of the scope of duty of care, Seafarers would be confronted with an unmanageable, unbearable and totally unpredictable liability." *Id.* at 35, 731 P.2d at 166 (citation omitted).

In proposing Final Jury Instruction 24, Lovin cited *Ponticas v. K.M.S. Investments*, 331 N.W.2d 907 (Minn.1983)[16] and *Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316 (Colo.1992).[17] In offering Final Jury Instruction 26, Lovin cited *Janssen.* Importantly, all of these cases have a common thread, which is that they rely on Restatement (Second) of Agency § 213(b) in articulating an employer's duty under the negligent hiring theory.

The *Ponticas* court adopted and discussed this Restatement section, stating that:

[l]iability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

331 N.W.2d at 911.

Likewise, the court in *Connes* relied on the Restatement (Second) of Agency § 213(b) and adopted the view discussed in comment d of that Restatement section. The court stated:

liability is predicated on the employer's hiring of a person under circumstances antecedently giving the employer reason to believe that the person, by reason of some

attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities.

831 P.2d at 1321.

Importantly, comment d to the Restatement (Second) of Agency § 213(b) provides in full:

d. *Agent dangerous.* The principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor. See the Restatement of Torts, § 308.

The dangerous quality in the agent may consist of his incompetence or unskillfulness due to his youth or his lack of experience considered with reference to the act to be performed. An agent, although otherwise competent, may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity. The negligence may be in entrusting an agent with instrumentalities which, in connection with his known propensities and the qualities of the instrumentalities, constitute an undue risk to third persons. These propensities may be either viciousness, thoughtlessness, or playfulness.

One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed

---

16. In *Ponticas*, the Supreme Court of Minnesota recognized the claim of negligent hiring and considered whether there was sufficient evidence to support a jury verdict that an apartment complex owner and operator breached their duties in hiring an apartment manager, who would have contact with tenants and access to their apartments, without adequate investigation into the manager's background. 331 N.W.2d 907, 913.

17. In *Connes*, the Supreme Court of Colorado recognized the tort of negligent hiring and held that a trucking company, in hiring an employee as a long-haul truck driver, had no legal duty to conduct an independent investigation into the employee's non-vehicular criminal background in order to protect a member of the public, such as a motel night clerk, from a sexual assault committed by the employee in the course of making a long-haul trip over the interstate highway system. 831 P.2d 1316.

is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation.

Liability results under the rule stated in this Section, not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm.

█ Final Jury Instructions 24 and 26 defined foreseeability in the context of a negligent hiring claim in a way that is consistent with Hawai'i law under *Janssen,* as well as the parameters of liability established under comment d of the Restatement (Second) of Agency § 213(b). These instructions comport with the principle articulated in *Janssen* that a defendant owes a duty of care "only to those 'who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.'" *See* 69 Haw. at 34, 731 P.2d at 165–66 (quoting *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 68, 647 P.2d 713, 720 (1982) (internal quotations omitted)).

█ Final Jury Instruction 24 required circumstances antecedently giving the employer reason to believe that the employee would "create an undue risk of harm to others in carrying out his or her employment responsibilities." [18] In addition, the instruction required the jury to "tak[e] into consideration the nature of the employment and the risk posed by the employee to those who foreseeably would come into association with him in carrying out his duties on the job." This instruction appropriately limited the employer's duty of care to those who are *foreseeably* endangered by the conduct and only in regard to the risks or hazards whose likelihood made the conduct unreasonably dangerous. *See id.* at 34, 731 P.2d at 165.

Final Jury Instruction 24 is based in part on cases outside this jurisdiction and Final Jury Instruction 26 includes language beyond verbatim quotes from *Janssen.* However, reading the instructions as a whole, considering the Hawai'i Supreme Court's past reliance on Restatement (Second) of Agency § 213(b), and given the parameters of liability expressed in comment d to Restatement (Second) of Agency § 213(b), we hold these instructions were not erroneous. That is, the instructions given were not prejudicially insufficient, erroneous, inconsistent, or misleading.

Because we conclude that the instructions were not erroneous, we do not reach the question of whether to invoke the plain error rule.

## IV. CONCLUSION

Based on the foregoing, we affirm the Amended Final Judgment entered by the

---

18. Without much discussion, Murphy raises a concern about the phrase "by reason of some attribute of character or prior conduct" in Final Jury Instruction 24. This language was utilized in *Connes,* 831 P.2d at 1321. It is also similar to the language in comment d to the Restatement (Second) of Agency § 213(b) that an employer may be negligent if he has reason to know that a servant or agent, "because of his qualities," is likely to harm others. Comment d goes on to discuss some types of potential dangerous "qualities," such as "incompetence or unskillfulness due to ... youth," "lack of experience consid-

ered with reference to the act to be performed," "reckless or vicious disposition," and "known propensities" such as "viciousness, thoughtlessness, or playfulness." Murphy does not point to any aspect of his claims against Lovin or any evidence in the case that would indicate possible prejudice to him because of the challenged phrase. Considering the instructions as a whole and comment d, the phrase challenged by Murphy does not render the jury instructions prejudicially insufficient, erroneous, inconsistent, or misleading.

Circuit Court of the Third Circuit on October 21, 2008.