HIRAM ROSA and MYRNA L. ROSA, Plaintiffs-Appellees, *v.*
CHARLES W. JOHNSTON and CWJ CORPORATION,
LTD., dba SOLAR HAWAII, Defendants-Appellants

NO. 7803

(CIVIL NO. 57737)

OCTOBER 4, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In a jury-waived trial, the court below rendered a money judgment in favor of plaintiffs-appellees Hiram Rosa and Myrna L. Rosa (Rosas) and against defendant-appellant CWJ Corporation, Ltd., dba Solar Hawaii (CWJ), for breach of contract and for unfair and deceptive trade practices. The court dismissed the complaint as to defendant-appellant Charles W. Johnston (Johnston), but entered an order denying him attorney's fee and costs. CWJ and Johnston appeal from such judgment and order.

The appeals involve the following issues:

1. Whether CWJ failed to prove its affirmative defense of accord and satisfaction.

2. Whether the court's determination that CWJ committed unfair and deceptive trade practices was proper.

3. Whether the court properly awarded costs of $1,066.95 to Rosas.

4. Whether the court properly denied Johnston's request for attorney's fee and costs.

We answer yes to issues 1 and 2 and affirm, but answer no to issues 3 and 4 and reverse and remand.

On or about October 30, 1978, Rosas and CWJ entered into a contract for the purchase and installation of a thermo-syphon type of solar water heating unit with a storage tank.

On November 14, 1978, the solar water heating system was installed. Simultaneously, the existing electric water heater was removed. During the installation, John W. Gale, an employee of CWJ,

informed his employer that the system as designed would never provide hot water to the occupants of Rosas' home. Despite such notification, CWJ instructed that the installation be completed as designed.

As designed and installed, the system failed to provide hot water between November 14, 1978 and January 4, 1979. Rosas called CWJ almost daily requesting repairs.

On November 23, 1978, Gale made a service call. He informed Rosas that the system could not be repaired to provide hot water.

On November 27, 1978, Adam Pilakowski and George Medeiros, both employees of CWJ, met Rosas at their home. On behalf of CWJ, they agreed with Rosas that (1) the system as installed would not work, (2) the system would be removed, (3) all funds paid by Rosas would be refunded, and (4) all damages to Rosas' home caused by the installation and removal of the system would be repaired and the premises restored to the original condition.[1] This is hereinafter referred to as the "November 27th agreement."

On December 15, 1978, Johnston, President of CWJ, sent a letter to Rosas. The letter in substance stated that (1) in accordance with Rosas' wishes the system would be removed as soon as possible, (2) the amount to be reimbursed to Rosas would be $2,200.00 (purchase price of $3,450.00 less CWJ's cost for installation and removal of system of $1,250.00), and (3) Rosas should sign the letter if the terms were agreeable. Mrs. Rosa signed the letter. This is hereinafter referred to as the "December 15th letter."

On January 4, 1979, CWJ removed the system, but failed to provide Rosas with an electric water heater. On January 17, 1979, CWJ delivered and installed a new electric hot water heater and gave Rosas a cashier's check for $2,200.00, which Rosas negotiated.

On April 20, 1979, Rosas filed a complaint against Johnston and CWJ in four counts. Count I alleged breach of contract, Count II negligence, Count III fraud, and Count IV deceptive business practice.

On October 5, 1979, a bench trial was held. After the conclusion of Rosas' case, the court dismissed Counts II and III of the complaint as to CWJ and dismissed the entire complaint as to Johnston.

---

[1] Finding of Fact No. 17 which was not challenged by CWJ.

On October 29, 1979, the Findings of Fact and Conclusions of Law and Judgment were filed.

On November 28, 1979, Orders denying CWJ's motion for new trial and denying Johnston's motion to assess attorney's fee and costs were filed.

## I.

CWJ contends that the December 15th letter and its subsequent performance thereunder constituted an accord and a satisfaction of any and all claims of Rosas. Consequently, the court below erred in awarding any damages to them. We disagree.

The case of *Teledyne Mid-America Corp. v. HOH Corp.*, 486 F.2d 987 (9th Cir. 1973), holds that an effective accord and satisfaction requires the following prerequisites: (1) existence of a "bona fide dispute" between the parties involved, (2) tender by the obligor which gives the obligee adequate notice that a compromise is being proposed, and (3) effective acceptance of the compromise offer in order to discharge the original obligation. We find that CWJ failed to prove prerequisite (1).

The claim of accord and satisfaction is an affirmative defense,[2] and CWJ had the burden of proving such defense. It was incumbent upon CWJ to prove that on or before December 15, 1978, there was between Rosas and CWJ "a bona fide dispute as to the existence or extent of liability." *Rust Engineering Company v. Lawrence Pumps, Inc.*, 401 F.Supp. 328, 333 (D. Mass. 1975). *See also Fire Insurance Association v. Wickham*, 141 U.S. 564 (1891); *La-Z-Boy Chair Company v. Hinds*, 364 F.Supp. 33 (D. S.C. 1973).

When the December 15th letter (claimed by CWJ to be the accord) was signed, there was no bona fide dispute between Rosas and CWJ. Unquestionably, there was a bona fide dispute prior to the November 27th agreement. Rosas complained that the system failed to deliver hot water as promised. CWJ insisted that the system should be working or would work with some slight changes or repairs. However, such dispute was resolved by the November 27th

---

[2] Rule 8(c), Hawaii Rules of Civil Procedure (HRCP) (1980).

agreement, whereby CWJ agreed to remove the system, refund all payments made by Rosas and fix all damages to the Rosas' home caused by the installation and removal of the system.

Absent a bona fide dispute, the December 15th letter was not an accord.

*Trask v. Shinn,* 41 Haw. 374 (1956) does not support CWJ. There, accord and satisfaction was applicable since the claim involved was unliquidated and the subject of a dispute. Here, the amount CWJ was obligated to refund to Rosas under the November 27th agreement was a liquidated claim. CWJ could not reduce the amount to be refunded to Rosas by simply labelling the December 15th letter an accord.

CWJ failed to meet its burden of proving its affirmative defense. The facts and applicable law lead us to the conclusion that the December 15th letter and subsequent performance by CWJ thereunder did not constitute accord and satisfaction.

## II.

CWJ argues that its acts did not constitute "unfair or deceptive acts or practices in the conduct of any trade or commerce" under Hawaii Revised Statutes (HRS) § 480-2 (1976).[3] We disagree.

In Count IV of their complaint, Rosas sought treble damages under HRS § 480-13 (1976).[4] To prevail under HRS § 480-13, Rosas

---

[3] HRS § 480-2 reads:

§ 480-2 *Unfair competition, practices declared unlawful.* Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

[4] In 1978, HRS § 480-13 read as follows:

§ 480-13 *Suits by persons injured; amount of recovery, injunctions.* (a) Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter:

(1) May sue for damages sustained by him, and, if the judgment is for the plaintiff, he shall be awarded a sum not less than $1,000.00 or three-fold damages by him sustained, whichever sum is the greater, and reasonable attorneys fees together with the cost of suit; provided that no showing that the proceeding or suit would be in the public interest (as these terms are inter-

had to establish (1) violation by CWJ of HRS chapter 480, (2) injury to Rosas' property resulting from such violation, (3) proof of the amount of damages, and (4) that the action was in the public interest or that CWJ was a merchant. *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 607 P.2d 1304 (1980); *Wiginton v. Pacific Credit Corp.*, 2 Haw. App. 435, 634 P.2d 111 (1981).

## A.

The undisputed evidence was that CWJ prepared and distributed to homeowners a 4-page marketing brochure entitled "STOP RENTING YOUR ELECTRICITY." The last page of the material included the following printed representations:

We scientifically tailor a system for your home, keeping two things in mind:

1. EFFICIENCY — To Do The Job It Was Intended To

2. DURABILITY — To Last Beyond The Payback Period

WE ARE PROFESSIONALS

Solar Hawaii is a division of CWJ Contractors, a kamaaina firm that has been in business for over 16 years. What makes us unique in the solar business is that we have a staff of licensed engineers, electricians, plumbers, designers and installers who allow us to design a system just for you.

Rosas relied on the representations contained in the material and entered into the contract with CWJ for the purchase and installation of the system.

The representations were false. Neither Solar Hawaii nor CWJ Contractors had been in business for 16 years, but in fact Solar

---

preted under section 5(b) of the Federal Trade Commission Act) is necessary when the party against whom the proceeding or suit is brought is a merchant as that term is defined in chapter 490; and

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, he shall be awarded reasonable attorneys fees together with the cost of suit.

(b) The remedies provided in this section are cumulative and may be sought in one action.

In 1980, a new subsection (c) was added to § 480-13.

Hawaii had been in operation less than three years as of August 1978. CWJ and Solar Hawaii did not have a single engineer licensed in the State of Hawaii on their staff. CWJ failed to scientifically tailor an efficient system for Rosas' home, since it failed to provide hot water from the time of its installation.

Further, CWJ installed the system knowing it was defective in design. CWJ failed to provide a reasonable and effective service and repair program to correct the system after installation. It disregarded the needs and requests of Rosas, its customers. It had Rosas execute the disadvantageous December 15th letter as a prerequisite to any relief from the defective system.[5]

In language, HRS § 480-2 is virtually a duplication of § 5(a)(1) of the Federal Trade Commission Act.[6] HRS § 480-3 (1976)[7] contains a clear legislative intent that interpretation of § 5(a)(1) by the Commission and federal courts should guide our courts in their construction of § 480-2. But "our courts must interpret and apply the statute in the light of conditions in Hawaii." *Island Tobacco Co. v. R. J. Reynolds Tobacco Co.,* 63 Haw. 289, 300, 627 P.2d 260, 268 (1981).

The Commission and federal courts have found the following false representations to be unfair or deceptive acts or practices under § 5(a)(1): (1) that a business had continued for more than 50 years when it had not, *Macher v. F.T.C.,* 126 F.2d 420 (2d Cir. 1942); (2) that a corporation was established in 1904, when it was actually incorporated in 1932, *Re Art National Manufacturers Distributing Co.,* 58 F.T.C. 719 (1961), *aff'd* 298 F.2d 476 (2nd Cir. 1962), *cert. denied.*

---

[5] Conclusions of Law Nos. 10(c), (d), (e) and (f), which are supported by Findings of Fact Nos. 12 through 21. Only Findings Nos. 18 and 19 were challenged by CWJ. We do not find Findings Nos. 18 and 19 to be "clearly erroneous." Rule 52(a), HRCP (1980).

[6] § 5(a)(1) is codified as 15 U.S.C. § 45(a)(1) which reads:
Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

[7] In 1978, HRS § 480-3 read as follows:
§ 480-3 *Interpretation.* It is the intent of the legislature that in construing section 480-2 the courts will be guided by the interpretations given by the Federal Trade Commission and the federal courts to section 5(a)(1) of the Federal Trade Commission Act.
This section was completely rewritten in 1981.

370 U.S. 939 (1962), *reh'g. denied.* 371 U.S. 854 (1962); (3) that salesmen of a furnace company were heating engineers, when they were not, *Holland Furnace Company v. F.T.C.,* 295 F.2d 302 (7th Cir. 1961); and (4) that plaintiff's bureau of research would furnish accurate information on every subject matter through its staff of competent editors, all experts in their particular field, when there was only "one old man" available, *Consolidated Book Publishers, Inc. v. F.T.C.,* 53 F.2d 942 (7th Cir. 1931), *cert. denied.* 286 U.S. 553 (1931).

Under § 5(a)(1), "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Spiegel, Inc. v. F.T.C.,* 540 F.2d 287, 293 (7th Cir. 1976). *See also F.T.C. v. Sperry & Hutchinson Co.,* 405 U.S. 233 (1972). Furthermore, under § 5(a)(1), proof of actual deception is unnecessary. "Misrepresentations are condemned if they possess a tendency to deceive." *Trans World Accounts, Inc. v. F.T.C.,* 594 F.2d 212, 214 (9th Cir. 1979).

In the light of the foregoing criteria, the Commission's and federal courts' application of § 5(a)(1), and the concern of our legislature for consumers,[8] we hold that the false representations in the 4-page brochure, the installation of the system which failed to provide hot water to Rosas and other acts and omissions of CWJ set forth above constituted acts or practices violative of HRS § 480-2.

B.

The record includes sufficient evidence establishing the other three essential elements required under HRS § 480-13 for Rosas to prevail.

In *Reiter v. Sonotone Corp.,* 442 U.S. 330 (1979), the Court stated that "[a] consumer whose money has been diminished . . . has been injured 'in his . . . property.' " *Id.* at 339. In construing the words "injured in his . . . property" included in HRS § 480-13, our supreme court adopted the construction given the same words by the United States Supreme Court in *Sonotone. Ai v. Frank Huff Agency, Ltd., supra.*

---

[8] *See* House Stand. Comm. Rep. No. 55, 3d Hawaii Leg., Gen. Sess., *reprinted in* House Journal 538-39 (1965) and House Stand. Comm. Rep. No. 267, 3d Haw. Leg., Gen. Sess., *reprinted in* House Journal 599-600 (1965).

Rosas proved that their money had been diminished when the system they had purchased from and had installed by CWJ failed to provide hot water as represented and they had not been refunded the purchase price in full and reimbursed other losses. Rosas were injured in their "property" within the meaning of HRS § 480-13.

Rosas proved the amount of damages as follows:

| | |
|---|---:|
| Unreimbursed purchase price | $1,334.96 |
| Loss of wages | 400.00 |
| Cost of repair to home | 345.00 |
| | $2,079.96 |

Pursuant to HRS § 408-13, the sum of $2,079.96 was trebled to $6,239.88.

There is no dispute that CWJ was a "merchant" as defined in HRS chapter 490.[9] Thus no HRS § 480-13 showing that the Rosas' suit would be in the "public interest" was necessary. *See Ai v. Frank Huff Agency, Ltd., supra.*

Accordingly, we find no error in the court's findings and conclusions that CWJ committed unfair and deceptive trade practices.

### III.

CWJ contends that the court improperly awarded costs of $1,066.95 to Rosas. We agree.

The record supports CWJ's contention. The trial transcript contains no testimony concerning costs nor any reference to the admis-

---

[9] HRS § 490:2-104(1) defines "merchant" as follows:

"Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

HRS § 490:2-105 defines "goods" as follows:

"Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 490:2-107).

Conclusion of Law No. 9 found CWJ a "merchant" and is not disputed in this case.

sion of cost sheets into evidence by the court. The only reference to the cost sheets is in the Clerk's Minutes of October 5, 1979 which reads as follows:

2:50 P.M.  DEFENDANT RESTED.
Opening argument by Mr. Kobayashi. List of costs of court (marked Plaintiff's [sic] Exhibit 12) was received by the Court.

2:57 P.M.
End of opening argument by Mr. Kobayashi. Argument by Mr. Bogetto.

Nothing in the record reveals that counsel for CWJ had an opportunity to examine the cost sheets (Exhibit 12) or to object to all or any items on the sheets.

Absent stipulation by the parties, the allowance of costs under HRS § 607-9 (1976)[10] or § 480-13[11] is subject to the procedure set forth in Rule 54(d), Hawaii Rules of Civil Procedure (HRCP) (1980).[12]

Since fair play decrees that CWJ be given an opportunity to object to any item in Rosas' cost bill, we hold that the award of costs to them was improper. On remand, Rosas should proceed to tax costs as provided by Rule 54(d).

In the opening brief, CWJ stated that a question presented for decision was whether the trial court erred in the manner in which

---

[10] HRS § 607-9 reads:

§ 607-9 *Cost charges exclusive; disbursements.* No other costs of court shall be charged in any court in addition to those prescribed in this chapter [607] in any suit, action, or other proceeding, except as otherwise provided by law.

All actual disbursements sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.

[11] See note 4, *supra.*

[12] Rule 54(d), HRCP, reads:

(d) *Costs.* Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on 48 hours' notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

Rosas were awarded attorney's fee and costs. However, CWJ presented no argument in its briefs nor oral argument concerning attorney's fee. We deem that CWJ has abandoned its appeal as to attorney's fee. *Quality Furniture, Inc. v. Hay,* 61 Haw. 89, 595 P.2d 1066 (1979) *reh'g denied,* 61 Haw. 661 (1979); *State v. Kahua Ranch,* 47 Haw. 466, 390 P.2d 737 (1964), *reh'g denied,* 47 Haw. 485, 391 P.2d 872 (1964); *Dement v. Atkins & Ash,* 2 Haw. App. 324, 631 P.2d 606 (1981).

## IV.

Johnston argues that the court erred in denying his request for attorney's fee and costs. We agree.

We start with the fundamental rule in this jurisdiction that "[n]o attorney's fees may be awarded as damages or costs unless so provided by statute, stipulation, or agreement." *Food Pantry v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 618, 575 P.2d 869, 878 (1978).

Johnston claims that he is entitled to attorney's fee under HRS § 607-14 (1976). This section provides that in "actions in the nature of assumpsit" attorneys' fee shall be taxed against and paid by the "losing party." He states that as to Rosas *vis-a-vis* Johnston, the former were the losing parties and must be taxed his attorney's fee. We agree.

Rosas argue that the action sounded in tort and not in assumpsit. This is not true. All four counts of the complaint named both Johnston and CWJ. Count I alleged breach of contract. An action for the recovery of damages for non-performance of a contract is one in assumpsit. *Braham v. Honolulu Amusement Co.,* 21 Haw. 583 (1913).

Rosas contend that they were not "losing parties" under the authority of *Yoshida v. Nobrega,* 39 Haw. 254 (1952). In *Yoshida,* the trial court sustained defendant's demurrer and awarded defendant attorney's fee. On appeal, the supreme court ruled that plaintiffs were not the "losers" intended by section 9754, Revised Laws of Hawaii 1945 (the predecessor of HRS § 607-14), since the judgment was not "upon the merits or final in form." *Id.* at 256.

In this case, the dismissal was on the merits. After the completion of Rosas' case, Johnston moved to dismiss under Rule 41(b), HRCP (1980), which provides in pertinent part as follows:

After the plaintiff, in an action tried by the court without a jury,

has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

If the defendant's motion is granted at this stage, it is "a decision on the merits in favor of defendant." 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2371, at 224 (1971). Thus *Yoshida* is inapposite.

Rosas also argue that they were not the "losing parties" since they prevailed over CWJ in the action. In multiple parties cases, a party may be a losing party *vis-a-vis* two other parties, *Smothers v. Renander*, 2 Haw. App. 400, 633 P.2d 556 (1981), and a party may be a loser as to one party and a winner as to another, *Cuerva & Associates v. Wong*, 1 Haw. App. 194, 616 P.2d 1017 (1980). HRS § 607-14 does not preclude Rosas from being the prevailing parties as to CWJ and the losers as to Johnston in the taxation of attorney's fee.

Finally, Rosas argue that the same attorney defended both CWJ and Johnston. Whether Johnston was a party or not, counsel had to render the legal services to CWJ and Johnston had not shown what part of counsel's fee was actually incurred by him. Thus Johnston was properly denied attorney's fee. This argument should be directed to the amount, if any, of attorney's fee to be awarded to Johnston on remand, not to Johnston's right under HRS § 607-14.

As a prevailing party *vis-a-vis* Rosas, Johnston is entitled to seek taxation of costs under Rule 54(d), HRCP, and HRS § 607-9. However, "[t]he allowance of costs to the prevailing party is not obligatory under the language of Rule 54(d), HRCP, [citations omitted], and the circuit court is vested with a sound discretion in allowing or disallowing all costs or only particular items [citations omitted]." *Harkins v. Ikeda*, 57 Haw. 378, 386, 557 P.2d 788, 793-94 (1976).

In its opening brief, CWJ contended that the court's conclusions that Rosas suffered mental distress, that they are entitled to recover $2,500.00 for such mental distress, and that Mr. Rosa sustained special damage for lost wages in the amount of $400.00 were erroneous. However, CWJ presented no argument in its brief nor oral argument on these points, and we consider these contentions to have

been abandoned. *Quality Furniture, Inc. v. Hay, supra; State v. Kahua Ranch, supra; Dement v. Atkins & Ash, supra.*

We affirm the judgment against CWJ, except the award of costs of $1,066.95, and reverse the order denying Johnston's requests for attorney's fee and costs. Upon remand, the trial court should determine the costs to be taxable against CWJ and the attorney's fee and costs to be awarded to Johnston, in the light of this opinion.

*Philip D. Bogetto* for defendants-appellants.

*John T. Komeiji (Bert T. Kobayashi, Jr.* with him on the brief; *Kobayashi, Watanabe, Sugita & Kawashima,* of counsel) for plaintiffs-appellees.