**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000845
31-JAN-2024
07:56 AM
Dkt. 123 MO**

NO. CAAP-18-0000845

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

LEE PUTNAM, Plaintiff-Appellee/Cross-Appellant, v.
JILL N. NUNOKAWA, Defendant-Appellant-Cross-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE
GOVERNMENTAL UNITS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-1302-07)

MEMORANDUM OPINION
(By: Leonard, Acting Chief Judge, and Wadsworth and Guidry, JJ.)

This appeal arises out of a dispute concerning loans made by Plaintiff-Appellee/Cross-Appellant Lee Putnam (**Putnam**) to Defendant-Appellant/Cross-Appellee Jill N. Nunokawa (**Nunokawa**). Nunokawa appeals and Putnam cross-appeals from the Final Judgment (**Judgment**), entered in favor of Putnam and against Nunokawa on October 5, 2018, by the Circuit Court of the First Circuit.[1] As part of her appeal, Nunokawa also challenges the Circuit Court's: (1) June 27, 2018 "Findings of Fact, Conclusions of Law, and Order" (**FOFs/COLs/Order**); (2) August 31, 2018 "Order Granting in Part and Denying in Part '. . . Putnam's Motion for an Award of Attorneys' Fees and Costs' Filed on July 18, 2018" (**Putnam Fee Order**); and (3) August 31, 2018 "Order Granting in Part and Denying in Part '. . . Nunokawa's Motion for an Award of Attorneys' Fees and Costs' Filed on July 20, 2018" (**Nunokawa Fee**

---

[1] The Honorable Gary W.B. Chang presided.

**Order**).  As part of her cross-appeal, Putnam also challenges the Circuit Court's: (1) June 9, 2017 "Order Granting in Part and Denying in Part . . . Nunokawa's Motion for Summary Judgment, Filed on April 10, 2017" (**Partial Summary Judgment Order**); (2) Putnam Fee Order; and (3) Nunokawa Fee Order.

For the reasons explained below, we reverse the Nunokawa Fee Order, vacate the Judgment to the extent it awards attorneys' fees and costs to Nunokawa and deducts such amounts from the total judgment amount entered in favor of Putnam, affirm the Judgment in all other respects, and remand with instructions.

## I. Background

In or about 2008 and 2009, Putnam and her husband, Dr. Walter Nunokawa (**Walter**), loaned money to Nunokawa for the construction of two houses on Nunokawa's property on 16th Avenue in Honolulu (**16th Ave. Property**).  During this period, Nunokawa incurred three debts to Putnam and Walter:  (1) a $625,000 loan (**First Loan**); (2) a $250,000.00 loan (**Second Loan**); and (3) credit card charges in the aggregate amount of $13,344.70, which Putnam and Walter allowed Nunokawa to make on their Home Depot accounts (**Home Depot Loan**) (collectively, **the Loans** or **the Debts**).  Nunokawa is Walter's daughter and Putnam's step-daughter.  Walter died in February 2015.

With respect to the First Loan, Putnam and Walter orally agreed to loan Nunokawa $625,000 by taking out a first mortgage loan on their property on Lumahai Street in Honolulu (**Lumahai Property**).  Sometime after the first mortgage loan closed in August 2008 and the funds were distributed to Nunokawa, she executed a promissory note (**Promissory Note** or **Note**), dated August 7, 2008, in the amount of $625,500.00 in favor of Putnam and Walter.  The Promissory Note, which contains an integration clause, states, among other things:  "Borrower will make an installment payment on the day of each month beginning as required by the secured mortgage between P[utnam/Walter] and Mason-Duffie Corp. until the principal and interest have been paid in full."

2

The parties agree that Nunokawa has made all monthly payments under the Promissory Note. The primary dispute with respect to the First Loan was whether the parties agreed it would be repaid in full when construction of the houses on the 16th Ave. Property was complete. Putnam maintained that when she and Walter agreed to make the First Loan, Nunokawa orally agreed to fully repay it upon completion of construction.

With respect to the Second Loan and the Home Depot Loan, the parties also disputed whether full repayment was due upon completion of construction. These loans are the subject of the challenged FOFs/COLs/Order, which is quoted below.

On July 7, 2015, Putnam filed a complaint against Nunokawa, asserting claims for specific performance, imposition of a constructive trust, breach of contract, and unjust enrichment. The complaint alleged, among other things, that Nunokawa breached an oral agreement to repay the Loans upon completion of the improvements to the 16th Ave. Property.

On April 10, 2017, Nunokawa filed a motion for summary judgment as to all claims asserted in the complaint. At a May 11, 2017 hearing, the Circuit Court granted summary judgment in favor of Nunokawa as to the breach of contract claim regarding the First Loan, ruling in part that the Promissory Note constituted a fully integrated written contract and, therefore, Putnam's claim based on the alleged covenant to repay the First Loan upon completion of construction was barred by the parol evidence rule. The Circuit Court denied the motion as to the breach of contract and unjust enrichment claims regarding the Second Loan and the Home Depot Loan.

On November 14-15, 2017, the Circuit Court presided over a jury-waived trial on the claims regarding the Second Loan and the Home Depot Loans. The court subsequently entered the FOFs/COLs/Order, which stated in part:

**FINDINGS OF FACT**

. . . .

3. [Putnam] and [Walter] borrowed money pursuant to certain mortgage loans ("Underlying Loans") on their . . . Lumahai Property[] in order to fund the Loans to [Nunokawa],

3

including the amount of $250,000.00 from a Home Equity Line of Credit with First Hawaiian Bank ("HELOC Loan")[.]

4. [Putnam] and [Walter] also allowed [Nunokawa] to make charges on their Home Depot credit card accounts in the amount of $13,344.70.

5. Initially, when the Debts were incurred by [Nunokawa] in 2008 and 2009, it was contemplated that the value of the [16th Ave.] Property would be increased with the construction of two new large structures on the land.

6. It was further contemplated that [Nunokawa] would repay the Underlying Loans that were taken out by [Putnam] and [Walter on their Lumahai Property to fund the Loans to Nunokawa] by refinancing the mortgage on Plaintiff's [sic] [16th Ave.] Property upon the completion of such construction, and the Debts would then be paid off.

7. [Nunokawa] also agreed to pay the monthly principal and interest payments related to the Underlying Loans taken out by [Putnam] and [Walter] until the Debts were paid in full.

8. [Nunokawa] was not able to refinance her mortgage in 2010 when construction was complete, and [Nunokawa] continued to pay the monthly payments on the Underlying Loans . . . and the Debts continued on.

. . . .

17. After the unfortunate death of [Walter], [Putnam] and [Nunokawa] had a meeting and held further discussions about the Debt.

18. Refinancing was not working out because of the unhealthy mortgage market in 2010, which was still reeling from the 2008 mortgage crisis.

19. [Nunokawa], therefore, decided to pursue the option of selling the [16th Ave.] Property and to pay off the Debt to [Putnam].

20. [Nunokawa], [Putnam] and Rose Kirland all testified that after [Nunokawa] sold the [16th Ave.] Property, it was [Nunokawa]'s intention to pay off all of the Loans in full.

21. In 2014, before she left on her sabbatical leave, [Nunokawa] began trying to sell the [16th Ave.] Property.

22. However, [Nunokawa]'s attempts with two different realtors were not successful.

23. [Nunokawa] then considered converting the [16th Ave.] Property to a Condominium Property Regime ("CPR") property to enhance its value and marketability.

24. However, [Nunokawa]'s efforts to convert the [16th Ave.] Property to a CPR did not progress.

25. It was during this process of attempting to sell the [16th Ave.] Property that [Nunokawa] agreed with [Putnam] to sell the [16th Ave.] Property and pay off the Loans.

4

26. Shortly after [Walter]'s funeral in March 2015, [Putnam] and [Nunokawa] had a conversation about retiring the Debt.

27. [Nunokawa] stated that it was her intention to sell the [16th Ave.] Property and pay off the Loans. Trial Exh. 36 (Transcripts of Jill Nunokawa Deposition ("Nunokawa Depo.")) at 99-101.

28. [Nunokawa] stated that it was her intention to sell the [16th Ave.] Property and pay off the Loans during the process of listing the [16th Ave.] Property for sale with two different realtors.

29. [Nunokawa] repeated her intention to sell the [16th Ave.] Property and pay off the Debt during her deposition. Nunokawa Depo at 104-105.

30. [Nunokawa] further repeated this intent in a July 30, 2015 email to [Putnam] wherein she stated, "I would like to move forward . . . and reduce harm and hardship. I will sign the documents and continue forward in the selling of the property. Once the property is sold and the debt is paid off, we both can be relieved of this excessive burden." Trial Exh. 29; Jill L. Nunokawa trial testimony under cross-examination by Mr. Hironaka.

31. The documents referred to by [Nunokawa] are a written mortgage and note that [Putnam] proposed [Nunokawa] sign.

32. In the course of discussing [Putnam]'s proposal for [Nunokawa] to memorialize the Debt by executing a mortgage and a note, [Nunokawa] announced that it was not necessary to execute such documents because it was [Nunokawa]'s intention to sell the [16th Ave.] Property and pay off all of the Debts to [Putnam].

33. In response, [Putnam] stated that selling the [16th Ave.] Property and paying off the Debt is even better than signing a mortgage and note. Trial Exh. 43 (Transcripts of Lee Putnam's Deposition ("Putnam Depo.")) at 79-80.

34. [Nunokawa] told [Putnam] that she did not want to refinance the mortgage on the [16th Ave.] Property because she was planning to sell the [16th Ave.] Property and pay off the Debt. Putnam Depo. at 87.

35. At this point, the original agreement to repay the Debt upon the completion of construction by refinancing the mortgage on Plaintiff's [sic] [16th Ave.] Property was replaced by an accord that the Debt would instead be repaid in full upon the sale of the [16th Ave.] Property.

36. This accord was reached by July 30, 2015. Trial Exh. 29.

37. [Nunokawa]'s efforts to sell the [16th Ave.] Property confirms this accord.

38. Both parties agreed to the term of paying off the Debt upon the sale of the [16th Ave.] Property.

39. The conduct of [Nunokawa] led [Putnam] to believe that the [16th Ave.] Property would be continuously marketed until sold.

5

40. There was no discussion about taking the [16th Ave.] Property off the market or converting the [16th Ave.] Property to a CPR property or suspending entirely all of [Nunokawa]'s efforts to sell the [16th Ave.] Property.

41. The accord was to sell the [16th Ave.] Property forthwith and retire the entire Debt.

42. This is confirmed by [Putnam]'s disappointment and frustration when [Nunokawa] announced that she had changed realtors, which appeared to threaten or delay the sale.

. . . .

51. [Nunokawa]'s view of the facts is influenced by her working and loving relationship with her father.

52. When viewed from the lens of her father-daughter relationship, it is easy to see how [Nunokawa] views the facts.

53. However, when [Walter] passed away in 2015 and [Putnam] became the sole owner of the Debt, unlike [Walter], [Putnam] did press for the full performance of [Nunokawa]'s obligation and they entered into an accord on approximately July 30, 2015.

CONCLUSIONS OF LAW

. . . .

5. After the accord came into existence on or about July 30, 2015, [Putnam] was entitled to seek full performance to seek a remedy for the breach of either the initial agreement or the accord. Azer v. Meyers, 8 Haw. App. 86, 107, 793 P.2d 1189, 1204-05, rev'd in part on other grounds, 71 Haw. 506, 795 P.2d 853 (1990).

6. Since entering into the accord, [Nunokawa] discontinued her efforts to sell the Property.

7. [Nunokawa]'s action in this regard constitutes a breach of the accord.

The Circuit Court awarded Putnam the following damages: (1) $244,980.60 for the repayment of the principal due under the Second Loan; (2) $13,344.70 for the Home Depot Loan; (3) "[s]ubtotal damages" in the amount of $258,325.30; (4) prejudgment interest taxed at a rate of 17.5 percent from July 30, 2015, to June 26, 2018, in the amount of $45,206.93; and (5) total judgment in the amount of $303,532.23.

Thereafter, Putnam filed a motion for an award of attorneys' fees and costs pursuant to Hawaii Revised Statutes (**HRS**) §§ 607-9 and 607-14. Putnam sought $63,604.19 in attorneys' fees and $2,697.57 in costs.

On July 20, 2018, Nunokawa filed a motion for an award of attorneys' fees and costs pursuant to HRS §§ 607-9 and 607-14. Nunokawa sought $52,099.46 in attorneys' fees and $1,788.49 in costs.

On August 31, 2018, the Circuit entered the Putnam Fee Order and the Nunokawa Fee Order.  In each order, the court determined that "both [Putnam] and [Nunokawa] enjoy prevailing party status with respect to the three claims asserted herein: [Putnam] is the prevailing party on the [Second Loan] and the [Home Depot Loan] claims and [Nunokawa] is the prevailing party on the [First Loan] claim.  Each is entitled to their attorneys' fees and costs for the proportion of the case upon which they prevailed."  In the Putnam Fee Order, the court concluded that a ten percent reduction in Putnam's claim for attorney's fees "for losing a portion of [Nunokawa's motion for summary judgment[,]" *i.e.*, regarding the First Loan, was reasonable.  The court thus awarded Putnam $57,243.77 in attorneys' fees and $2,697.57 in costs.  In the Nunokawa Fee Order, the court concluded that a forty percent reduction in Nunokawa's fee claim was reasonable. The court thus awarded Nunokawa $31,259.68 in attorneys' fees and $1,788.49 in costs.

On October 5, 2018, the Circuit Court entered the Judgment in favor of Putnam and against Nunokawa in the total amount of $330,425.49.  This appeal and cross-appeal followed.

## II. Discussion

On appeal, Nunokawa contends that the Circuit Court erred:  (1) "when it concluded that Azer v. Myers supported the court's theory that the parties agreed to an accord"; (2) "when it relied upon [FOFs] that were unsupported by the record to support its own theory of an accord"; (3) "in finding a breach of the alleged accord"; (4) "when it failed to apply to its Final Judgment ruling the very same facts and law it relied upon in its own ruling in favor of [Nunokawa's motion for summary judgment]"; (5) "in its findings with regard to [Walter's] alleged statements regarding inheritance"; and (6) "by basing its award of attorney fees on *both* an erroneous view of the law and on a clearly

7

erroneous assessment of the evidence." Nunokawa summarily challenges FOFs 6, 8-10, 12-16, 18-20, 24-25, 27-42, 44-49, and 51-53, and COLs 3-8.[2/]

On cross-appeal, Putnam contends that the Circuit Court erred: (1) "in granting in part Nunokawa's Motion for Summary Judgment"; (2) "in denying in part Putnam's Motion for an Award of Attorneys' Fees and Costs"; and (3) "in granting in part Nunokawa's Motion for an Award of Attorney's Fees and Costs."

## A.   Nunokawa's Appeal

### 1.   Existence of an Accord and Breach

Nunokawa contends that "the Circuit Court erred in 1) concluding that <u>Azer</u> . . . supported the court's theory that the parties agreed to an accord, and 2) in making its determination of an accord without applying the test for a valid accord that this Court set out in <u>Rosa v. Johnson</u>[, 3 Haw. App. 420, 651 P.2d 1228 (1982)]." Nunokawa further argues that "the record on appeal does not support the Circuit Court's finding of an accord and breach. . . ."

The Circuit Court cited <u>Azer</u> in COL 5, quoted above. It appears that the court did not rely on <u>Azer</u> to support the court's determination that the parties reached an accord. Rather, the court relied on <u>Azer</u> for the proposition that, given the existence of an accord – a conclusion we address below – Putnam was entitled to seek a remedy for either breach of the parties' initial agreement or for the breach of the accord. This is not an incorrect statement of the law. <u>See</u> 8 Haw. App. at 107-08, 793 P.2d at 1204-05.

We thus address the crux of Nunokawa's argument – that the Circuit Court clearly erred in concluding that the parties

---

[2/]    Nunokawa presents no specific argument explaining why FOFs 8-10, 18-20, 24-25, 30-34, 36-38, 41-42, 44-49, and 51-53, and COLs 3-4 (which are mixed conclusions of fact and law) are clearly erroneous. <u>See</u> HRAP 28(b)(4), (7); <u>Morgan v. Plan. Dep't, Cnty. of Kauai</u>, 104 Hawaiʻi 173, 180-81, 86 P.3d 982, 989-90 (2004). We address Nunokawa's arguments only to the extent they are discernible. <u>See</u> <u>Hawaii Ventures, LLC v. Otaka, Inc.</u>, 114 Hawaiʻi 438, 478, 164 P.3d 696, 736 (2007).

reached an accord by July 30, 2015.[3/] We find no clear error in this conclusion.

"An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." Id. (quoting Restatement (Second) of Contracts § 281(1) (1979)); see 1 Am. Jur. 2d, Accord and Satisfaction § 5 (Oct. 2023 Update) ("[T]he essential elements of 'accord and satisfaction' are an agreement to settle a dispute and consideration which supports the agreement."). "An accord is enforceable as a contractual agreement in its own right, and therefore, an action may be maintained against the party in default for the breach or nonperformance of an accord under ordinary contracts principles." 1 Am. Jur. 2d, Accord and Satisfaction § 52 (footnote omitted); see Azer, 8 Haw. App. at 107, 793 P.2d at 1204-05 (quoting Restatement § 281(2)).

A claim of accord and satisfaction can also be raised as an affirmative defense by a defendant in a breach of contract action. See Rosa, 3 Haw. App. at 423, 651 P.2d at 1232. In Rosa, this court stated that "an effective accord and satisfaction requires the following prerequisites: (1) existence of a 'bona fide dispute' between the parties involved, (2) tender by the obligor which gives the obligee adequate notice that a compromise is being proposed, and (3) effective acceptance of the compromise offer in order to discharge the original obligation." Id. These prerequisites are consistent with the elements of an accord for purposes of maintaining an action for its breach. Cf. Azer, 8 Haw. App. at 107-08, 793 P.2d at 1204-05 (quoting Restatement § 281(1)); 1 Am. Jur. 2d, Accord and Satisfaction § 5.

As to the Rosa elements, Nunokawa first argues there was no bona fide dispute between the parties, pointing to the lack of a dispute concerning the amount of the debt. The record

_____

[3/] Given that the Circuit Court tried only the claims regarding the Second Loan and the Home Depot Loan, we construe the FOFs/COLs as determining that the parties reached an accord on the Second Loan and the Home Depot Loan. The parties agree on this point.

reflects, however, that the dispute related not to the amount of the debt, but to whether full repayment was due upon completion of improvements to the 16th Ave. Property. At trial, for example, Nunokawa testified that the parties did not discuss when the loans would be paid off in full. Putnam, on the other hand, testified that Nunokawa agreed to repay the loans when the improvements to the Property were complete. Substantial evidence in the record supports the existence of a bona fide dispute between Putnam and Nunokawa regarding the timing of repayment in full.

As to the second and third Rosa elements, Nunokawa argues "there is no intent to offer a compromise where Ms. Nunokawa testified at trial that her intent in selling her house was due to her chronic illness[,] and "[a]s there was no compromise offer . . . , there could be no acceptance." In response, Putnam points to the following evidence adduced at trial, including her own testimony, that: (1) after completion of the improvements, Nunokawa told Putnam that she was not in a position to refinance and pay off the loans; (2) after several years, Putnam expressed concern to Nunokawa over the lack of repayment of the loans; (3) in 2012, the parties began discussing securitizing the loans by putting a mortgage on the 16th Ave. Property; (4) while Putnam's attorney was preparing the documents to securitize the loans, Nunokawa asked to stop the process and told Putnam she was going to sell the 16th Ave. Property and repay the loans with the proceeds; and (5) Putnam responded, "Well fine. That's even better," and stopped the securitization process.

"[A] promisor manifests an intention if he [or she] believes or has reason to believe that the promisee will infer that intention from his [or her] words or conduct." In re Herrick, 82 Hawaiʻi 329, 338, 922 P.2d 942, 951 (1996) (quoting Restatement § 2(1) comment b); see also United Pub. Workers, AFSCME, Loc. 646, AFL-CIO v. Dawson Int'l, Inc., 113 Hawaiʻi 127, 141, 149 P.3d 495, 509 (2006) ("A party's words or acts are judged under a standard of reasonableness in determining whether he [or she] has manifested an objective intention to agree.")

(quoting <u>Earl M. Jorgensen Co. v. Mark Constr., Inc.</u>, 56 Haw. 466, 470, 540 P.2d 978, 982 (1975)).  Moreover, "[i]n cases of conflicting evidence, the credibility of the witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal. It is not the function of the appellate courts to second-guess the trier of fact where there is substantial evidence in the record to support its conclusion." <u>Stanford Carr Dev. Corp. v. Unity House, Inc.</u>, 111 Hawaiʻi 286, 304, 141 P.3d 459, 477 (2006) (original brackets omitted) (quoting <u>In re Estate of Herbert</u>, 90 Hawaiʻi 443, 454, 979 P.2d 39, 50 (1999)).

Here, there was conflicting evidence as to Nunokawa's intent in stating "her desire to sell" the 16th Ave. Property. Indeed, Nunokawa challenges FOFs 27-29, 35, and 39-40 by construing her own testimony.  As reflected in the FOFs/COLs/Order, however, the Circuit Court weighed <u>all</u> of the conflicting evidence, weighed the witnesses' credibility, and determined that Nunokawa expressed her intent to sell the Property and pay off the loans.  <u>See, e.g.</u>, FOFs 25-30, 32, 35. The court further determined that the parties reached an accord as to the Second Loan and Home Depot Loan <u>by</u> July 30, 2015, under which Nunokawa would sell the 16th Ave. Property and repay the debt in full upon the sale.[4]  <u>See, e.g.</u>, FOFs 35-36 and <u>supra</u>, note 3.  The decision to weigh the conflicting evidence in Putnam's favor was within the province of the Circuit Court. Based on our review of the record, substantial evidence supports FOFs 27-29, 35, and 39-40,[5] and the court did not clearly err in making these findings.  The second and third <u>Rosa</u> elements were

---

[4]     Contrary to Nunokawa's argument, the filing of the complaint on July 7, 2015, did not negate the consideration for the parties' accord.

[5]     Nunokawa also appears to challenge FOFs 6, 27-29, and 35 as inconsistent with the Circuit Court's Partial Summary Judgment Order.  This argument is without merit.  During the hearing on Nunokawa's motion for summary judgment, the Circuit Court ruled that the Promissory Note was fully integrated and, therefore, Putnam's claim based on the alleged covenant to repay the First Loan upon completion of construction was barred by the parol evidence rule.  During the jury-waived trial, however, the Circuit Court was tasked with determining Putnam's claims regarding the Second Loan and the Home Depot Loan, which were not written agreements.  The court thus properly considered all relevant evidence, including parol evidence, to determine the scope of the parties' related agreements.

satisfied, and an accord was established.[6]

Based on our review of the record, we also reject Nunokawa's argument that the Circuit Court clearly erred in finding that Nunokawa breached the parties' accord, as well as her related challenge to FOFs 39-41 and 12-16, and COLs 6-8, which are mixed conclusions of fact and law. The evidence supports the finding that Nunokawa's conduct led Putman to believe that the property would be continuously marketed until sold. The evidence further establishes that there were several breaks in Nunokawa's efforts to list the Property, including when she terminated the listing with Patricia Case in September 2014.

Nunokawa also challenges FOFs 12-16, which quote an alleged statement made by Walter (based on the testimony of witness Rose Kirland) regarding Putnam's inheritance, and conclude that the statement was "a motivating factor for both sides."[7] To the extent that Nunokawa challenges the alleged statement as hearsay, she fails to state where in the record she objected to the statement, and her argument is thus disregarded. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4). In any event, the Circuit Court's quotations from Kirland's

---

[6] The evidence also established the elements of an accord under Restatement § 281. See Azer, 8 Haw. App. at 107-08, 793 P.2d at 1204-05.

[7] FOFs 12-16 state:

12. However, [Nunokawa] did respect her father's directive when [Walter] said to [Nunokawa], "This is Lee's inheritance. Please pay it back." Trial Exhibit ("Exh.") 44 (Transcripts of Rose Kirland Deposition ("Kirland Depo.")) at 38; Rose Kirland trial testimony under cross-examination by Mr. Hosoda.

13. [Walter]'s statement to [Nunokawa] was a motivating factor for both sides.

14. For [Putnam], it indicates part of her motivation to free the Lumahai Property from the financial burden of extending over $800,000.00 in liquidated equity to [Nunokawa] as [Putnam] gets further along in her retirement.

15. And for [Nunokawa], she knew that it was an important concern for her father to provide financial security to [Putnam].

16. Rose Kirland testified that [Putnam] stated to [Nunokawa] that the Lumahai Property was her only support and that the Debt was all of [Putnam]'s money. Kirland Depo. at 32-33.

12

deposition testimony are correct, and the court's conclusions regarding the parties' motivations are not necessary to support its conclusion that Nunokawa breached the accord by discontinuing her efforts to sell the Property.

Accordingly, the Circuit Court did not clearly err in determining that Nunokawa breached the parties' accord.

### 2.   Award of Attorneys' Fees to Putnam

Nunokawa contends that "the Circuit Court has abused its discretion by basing its ruling on both an erroneous view of the law and a clearly erroneous assessment of the evidence in the record." She does not, however, make any discernible argument as to how the Circuit Court misapplied the law or misevaluated the evidence in awarding attorneys' fees to Putnam. To the extent that Nunokawa's contention regarding the fee award is based on her argument that the law and the evidence do not support an accord and breach, we have rejected that argument. Any other point regarding the fee award is waived for failure to present a discernible argument. See HRAP Rule 28(b)(7).

### B.   Putnam's Cross-Appeal

### 1.   The Partial Summary Judgment Order

On Cross-Appeal, Putnam contends that summary judgment as to the First Loan was improper because "a genuine issue of material fact existed regarding whether Nunokawa was required to repay the First Loan upon completion of the improvements to the 16th Ave. Property." Putnam argues that "the terms of the First Loan, as orally agreed upon at the time the loan was made, are enforceable as an oral contract[,]" and "Nunokawa had an obligation to accurately reflect the terms of the oral agreement as to the First Loan . . . ."[8/]

---

[8/]   Putnam further argues that: (1) the parol evidence rule should be relaxed where, as here, the parties used "a standard promissory note," and (2) Nunokawa's testimony shows that "the parties could not have intended the Note to be a final expression of their agreement." Putnam fails to state where in the record she brought these issues to the attention of the Circuit Court. Her related arguments are thus deemed waived. See HRAP Rule 28(b)(4); State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003).

While a properly formed oral contract is enforceable, here, the Circuit Court concluded that a fully integrated written agreement was executed subsequent to the disputed oral agreement. The record supports this conclusion. "The parol evidence rule applies when there is a single final memorial of the understanding of the parties; when that takes place, all prior and contemporaneous negotiations are excluded and are superseded by such written memorial." Pancakes of Hawaii, Inc. v. Pomare Properties Corp., 85 Hawaiʻi 300, 310, 944 P.2d 97, 107 (App. 1997) (quoting 29A Am. Jur. 2d Evidence § 1092, at 551-52 (2d ed. 1994)). Thus, the Promissory Note superseded any prior agreements and, as the Circuit Court correctly ruled, the alleged covenant to repay the First Loan upon completion of construction was barred by the parol evidence rule.[9]

Accordingly, the Circuit Court did not err in granting in part Nunokawa's motion for summary judgment as to Putnam's claims regarding the First Loan based on application of the parole evidence rule.

## 2. Award of Attorneys' Fees to Putnam and Nunokawa

Putnam contends that the Circuit Court erred: (1) in denying in part Putnam's motion for an award of attorneys' fees and costs by deducting ten percent of the requested fees; and (2) granting in part Nunokawa's motion for an award of attorney's fees and costs. Regarding the second contention, Putnam argues that the court, having found that Putnam was a prevailing party, erred in concluding that Nunokawa was also a prevailing party. Putnam also argues that Nunokawa's requested fees are unreasonable.

With respect to Putnam's second contention, we conclude that the Circuit Court abused its discretion in determining that Putnam and Nunokawa were both prevailing parties for purposes of

---

[9] While the parole evidence rule includes an exception for fraud, see Pancakes of Hawaii, 85 Hawaiʻi at 310-11, 944 P.2d at 107-08, Putnam did not invoke that exception in opposing Nunokawa's motion for summary judgment and does not argue it on cross-appeal.

awarding attorneys' fees under HRS § 607-14.[10/]  See Oahu Publ'ns, Inc. v. Abercrombie, 134 Hawaiʻi 16, 22, 332 P.3d 159, 165 (2014).  "[I]n general, a party in whose favor judgment is rendered by the [trial] court is the prevailing party in that court, plaintiff or defendant, as the case may be.  Although a plaintiff may not sustain his entire claim, if judgment is rendered for him, he is the prevailing party for purposes of costs and attorneys' fees."  Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 126, 176 P.3d 91, 125 (2008) (internal quotation marks and original brackets omitted) (quoting MFD Partners v. Murphy, 9 Haw. App. 509, 514, 850 P.2d 713, 716 (1992)); Sierra Club v. Dep't of Transp. of State of Haw., 120 Hawaiʻi 181, 216, 202 P.3d 1226, 1261 (2009).  Where there is no final judgment clearly stating which party prevailed, the court "is required to first identify the princip[al] issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party prevailed on the issues."  Sierra Club, 120 Hawaiʻi at 216, 202 P.3d at 1261 (quoting MFD Partners, 9 Haw. App. at 514, 850 P.2d at 716).  "A party 'will be deemed to be the successful party for the purpose of taxing costs and attorney's fees' 'where that party prevails on the disputed main issue, even though not to the extent of his original contention.'"  Deutsche Bank Nat'l Tr. Co. v. Kozma, 140 Hawaiʻi 494, 498, 403 P.3d 271, 275 (2017) (brackets omitted) (quoting Kaleikini v. Yoshioka, 129 Hawaiʻi 454, 461, 304 P.3d 252, 259 (2013)); see Sierra Club, 120 Hawaiʻi at 216, 202 P.3d at 1261

---

[10/]    HRS § 607-14 (2016) provides, in pertinent part:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee.  The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

(quoting <u>Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.</u>, 58 Haw. 606, 620, 575 P.2d 869, 879 (1978)) (same).

Here, the Judgment plainly states that "Final Judgment on the Complaint . . . is hereby entered in favor of . . . PUTNAM and against . . . NUNOKAWA in the total amount of . . . $330,425.49[]." However, the Judgment also awards attorneys' fees and costs to both Putnam and Nunokawa consistent with the Putnam Fee Order and the Nunokawa Fee Order, in which the Circuit Court determined that "both [Putnam] and [Nunokawa] enjoy prevailing party status with respect to the three claims asserted herein[.]" In reaching this conclusion, it appears the court identified the principal issues raised in the case as the three loan claims that were in dispute, and determined that Putnam prevailed on the Second Loan and the Home Depot Loan claims, while Nunokawa prevailed on the First Loan claim. These determinations are supported by the record and are consistent with the applicable case law. <u>See</u> <u>supra</u>. However, the case law does not support the court's determination that Putnam and Nunokawa were <u>both</u> prevailing parties for purposes of awarding attorney's fees under HRS § 607-14. Further, the plain language of the statute, which refers to "<u>the</u> losing party" and "<u>the</u> prevailing party," does not appear to contemplate <u>two</u> prevailing parties in this procedural context. HRS § 607-14 (emphases added). Rather, a party "will be deemed to be the successful party for the purpose of taxing costs and attorney's fees" "where [that] party prevails on the disputed main issue, even though not to the extent of his original contention[.]" <u>Sierra Club</u>, 120 Hawaiʻi at 216, 202 P.3d at 1261.

Under the applicable case law, Putnam was the prevailing party for purposes of awarding attorney's fees under HRS § 607-14. Final judgment was entered in favor of Putnam and against Nunokawa. Moreover, based on the Circuit Court's determination that Putnam prevailed on the Second Loan and Home Depot Loan claims (*i.e.*, two of the three loan claims), on balance, Putnam prevailed on the disputed main issues raised by the pleadings and the proof. <u>See</u> <u>MFD Partners</u>, 9 Haw. App. at 514, 850 P.2d at 716 ("It is clear from the jury's special

verdict and the trial court's judgment that Plaintiffs prevailed on both issues.")  The Circuit Court therefore abused its discretion in awarding attorneys' fees and costs to Nunokawa, and we reverse the Nunokawa Fee Order.  Given our conclusion, we need not reach Putnam's argument that Nunokawa's requested fees were unreasonable.

We further conclude that the Circuit Court did not abuse its discretion in deducting ten percent of Putnam's requested fees "for losing a portion of [Nunokawa's motion for summary judgment[,]" *i.e.*, regarding the First Loan claim.

### III. Conclusion

For the reasons discussed above, we reverse the August 31, 2018 "Order Granting in Part and Denying in Part '. . . Nunokawa's Motion for an Award of Attorneys' Fees and Costs' Filed on July 20, 2018," entered by the Circuit Court of the First Circuit.  We also vacate the Circuit Court's October 5, 2018 Final Judgment, to the extent that it awards attorneys' fees and costs to Nunokawa and deducts such amounts from the total final judgment amount entered in favor of Putnam and against Nunokawa.  We affirm the Final Judgment in all other respects. We remand the case to the Circuit Court with instructions to recalculate the final judgment total amount entered in favor of Putnam and against Nunokawa, consistent with this memorandum opinion, and to enter a new final judgment reflecting the recalculated amount.

DATED:  Honolulu, Hawaiʻi, January 31, 2024.


On the briefs:

Lyle S. Hosoda and
Addison D. Bonner
(Hosoda & Bonner,LLLC),
for Defendant-Appellant/
Cross-Appellee

Philip W. Miyoshi
(Miyoshi & Hironaka LLC)
for Plaintiff-Appellee/
Cross-Appellant

/s/ Katherine G. Leonard
Acting Chief Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Kimberly T. Guidry
Associate Judge